CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY V.
JOHN P. SATTLER, ADMINISTRATOR.

FILED MAY 8, 1902. No. 11,549.

Commissioner's opinion, Department No. 3.

1. **Passenger on Train**: LEAVING CAR BEFORE ARRIVING AT TERMINUS. A passenger on a railroad train does not lose his character as such by leaving his car at a regular station from motives of either business or curiosity, although he has not yet arrived at the terminus of his journey.

2. ———: ———: SWITCH: ASSUMPTION OF RISK. Where, however, the train in which the passenger is being transported is run upon a switch to allow the passage of another train, or is stopped at a place other than that used by the carrier for receiving and discharging passengers, and the stoppage is not for the purpose of allowing passengers to board the train or alight therefrom, one who leaves the train must usually assume all the ordinary risks incident to his action.

3. ———: DEFINITION: CONSTRUCTION OF STATUTE. All passengers actually on the train, whether the same is moving or not, are passengers "being transported over its road" within the meaning of section 3, chapter 72, of the Compiled Statutes; and passengers who have left the train at the express or implied invitation of the carrier, for any necessary purpose incident

to their journey, are passengers being transported within the meaning of said section.

4. ———: LEAVING CAR: PROTECTION. Where a passenger leaves his car of his own volition, for some purpose of his own not incident to the journey he is pursuing, and at a place not designed for the discharge of passengers, he can not claim the protection of section 3, chapter 72 of the Compiled Statutes, although the carrier may, under some exceptional circumstances, still owe him the duty imposed on it by the common law.

5. Facts Set Out: CONCLUSION. A through train between Denver and Chicago ran onto a side track at an intermediate station to allow the passage of another through train from the east. A through passenger left his car, crossed the main track of the road to the depot, and went to a pump for a drink of water. He filled his cup from the pump, but, before drinking, heard the whistle of the incoming train, and started on a rapid run to regain his car. From the pump the track over which the incoming train was approaching could be seen for about one hundred feet, and three steps from the pump toward the track over which the train was approaching the track was visible for a mile or more. When the passenger reached the track the approaching train was about fifty feet distant from him, and running at a high rate of speed. The passenger attempted to pass in front of the train, and was struck by the engine and killed. *Held* that, under the circumstances, he was not "a passenger being transported over the road," within the meaning of section 3, chapter 72 of the Compiled Statutes, and the railroad was not liable for damages on account of his death because of his own negligence.

ERROR from the district court for Cass county. Tried below before JESSEN, J. *Reversed.*

*M. A. Low, William F. Evans* and *Woolworth & McHugh,* for plaintiff in error.

*Matthew Gering, contra.*

DUFFIE, C.

John P. Sattler, the defendant in error, is administrator of the estate of Emanuel Leveroni. The deceased was killed by a train of the railroad company at the station of Alvo, in Cass county, Nebraska, on the 11th of April, 1899. The jury returned a verdict against the company for $4,000, upon which judgment was entered, and the com-

pany has brought the case to this court by petition in error.

There is little or no dispute over the facts in the case. Leveroni, the deceased, was a through passenger over the railway of the plaintiff in error from the city of Denver to Chicago. The train upon which he was traveling arrived at the station of Alvo from the west on schedule time at 2:52 in the afternoon. On its arrival at the station the train went upon a side track to await the arrival and passage of a west-bound train which was then due at that point; its schedule time being the same at that station as the train upon which the decedent was traveling. The train from the east was behind time, and, while the train upon which Leveroni was a passenger was waiting on the side track, Leveroni left his train, crossed over the main track to the depot platform and to a pump a few feet west of the depot, to get a drink of water. About the time that he reached the pump the west-bound train was heard to whistle, when Leveroni left the pump and started on a run for his car, and in crossing the track upon which the west-bound train was approaching the station, was struck by the approaching train and instantly killed. The east-bound train upon which he was a traveler did not move from the side track until after the deceased was killed, nor had any signal or order been given that said train would move or start. It might be further stated that the evidence is undisputed that there was plenty of good drinking water in the car upon which the deceased was a passenger, and in all the cars of that train.

Two questions are presented by this record for our determination: (1.) Was the deceased a passenger, within the legal meaning of that word, after leaving his car while it was standing upon the side track for the purpose of allowing an approaching train to pass? (2.) If he was such passenger can his administrator claim for him or his estate the benefits of the provisions of section 3 of chapter 72 of the Compiled Statutes of 1901?

Relating to the first question, the courts may be said

to be fairly divided. In Maine and Minnesota the rule appears to be that a passenger on a railway, who purchases a ticket for a distant station, and gets off the train temporarily, and without objection or notice, while it is stopping at an intermediate station, surrenders for the time being his place and rights as a passenger. *State v. Grand Trunk R. Co.,* 58 Me., 176; *De Kay v. Chicago, M. & St. P. R. Co.,* 41 Minn., 178. See, also, *Missouri P. R. Co. v. Foreman,* 73 Tex., 311. In *De Kay v. Railway Co.* the facts were very similar to the facts under consideration in the case at bar. The conclusion of the court upon these facts is well expressed in the syllabus of the case as follows: "Where a passenger enters a railway train and pays his fare to a particular place, his contract does not obligate the company to furnish him with means of egress and ingress at an intermediate station; and if he leaves the train at such a station, he for the time being surrenders his place as a passenger, and takes upon himself the responsibility of his own movements. But if he leaves without objection on part of the company, he does no illegal act, and has a right to re-enter and resume his journey. While, if a railway company permits the practice of passengers leaving and re-entering their train, while on a side track at an intermediate station for the purpose of letting another train pass on the main track, it is bound to use reasonable care not to expose such passengers to unnecessary danger, yet it is not bound to so regulate its business as to make the side track as safe a place of ingress or egress as the station platform; nor does it give any assurance, under such circumstances, to passengers that no trains will pass while they are crossing or recrossing the main track. Neither does the call of 'all aboard!' by the conductor of the side-tracked train, give an assurance to those who have left their train that they may cross the main track in safety without looking for approaching trains. Passengers who have thus left their train, when they attempt to cross the track under these circumstances, are bound to exercise reasonable care

and caution to avoid injury from passing trains, and must use their senses for that purpose. The station platform and not the side track is the proper place to enter or leave a train; and those who, for purposes of their own, use the latter, assume all the extra risks necessarily incident to such a practice, and are bound to exercise a degree of care corresponding to the increased risks." Another class of cases establish the rule that a passenger on a railroad train does not lose his character as such by alighting from the cars at a regular station from motives of either business or curiosity, although he has not yet arrived at the terminus of his journey. *Parsons v. New York C. & H. R. R. Co.,* 113 N. Y., 355; *Clussman v. Long Island R. Co.,* 9 Hun [N. Y.], 618.

Of the two classes of cases which we have been examining, we think that the latter establishes the better rule. In this country of long journeys by railway trains, there can be no impropriety in a passenger claiming the right, which may be said to be established by long custom, to leave his car at any intermediate point on his journey, where a stop of any considerable time is made, to send a message, to obtain exercise and relief by walking up and down the platform, or to gratify his curiosity, provided he does not interfere with the employees of the company, or run counter to any established rule brought to his notice. In the exercise of this privilege he does not lose his character of passenger, and the common-law duties of the carrier are still to be exercised in his behalf, and injuries received on account of a failure on the part of the carrier to observe all its duties toward him required by the rules of the common law must be responded to in an action for damages. We think that the supreme court of Massachusetts has announced the true rule in *Dodge v. Boston & Bangor Steamship Co.,* 148 Mass., 207, where the following language is used: "To determine the rights of the parties in every case, the question to be answered is, what shall they be deemed to have contemplated by their contract? The passenger, without losing his rights while he

is in those places to which the carrier's care should extend, may do whatever is naturally and ordinarily incidental to his passage.   If there are telegraph offices at stations along a railroad, and the carrier furnishes in its cars blanks upon which to write telegraphic messages, and stops its trains at stations long enough to enable passengers conveniently to send such messages, a purchaser of a ticket over the railroad has a right to suppose that his contract permits him to leave his car at a station for the purpose of sending a telegraphic message; and he has the rights of a passenger while alighting from the train for that purpose, and while getting upon it to resume his journey.   So of one who leaves a train to obtain refreshment, where it is reasonable and proper for him so to do, and is consistent with the safe continuance of his journey in a usual way.   Where one engages transportation for himself by a conveyance which stops from time to time along his route, it may well be implied, in the absence of anything to the contrary, that he has permission to alight for his own convenience at any regular stopping-place for passengers, so long as he properly regards all the carrier's rules and regulations, and provided that his doing so does not interfere with the carrier in the performance of his duties."

All the cases agree that the carrier must furnish safe ingress and egress to and from the train for its passengers. In many of the larger stations the passenger has to cross two or three or four tracks in going to or from his train. In such cases he may assume that the company will see that his way across such tracks is clear and uninterrupted, and that no injury will be incurred in crossing the same. In *Jewett v. Klein*, 27 N. J. Eq., 550, it is held that a person who, in passing from the depot to the train he was about to take, was obliged to cross an intervening track, was not guilty of contributory negligence in that he did not, before approaching the train, look up or down the track to see whether there was danger from an approaching train, and in that he approached the train diagonally

from the platform of the station, and before his train had come to a full stop. Referring to this case, the supreme court of Colorado, in *Atchison, T. & S. F. R. Co. v. Shean,* 33 Pac. Rep., 108, says: "By the foregoing and other well-considered cases, it is settled that a passenger on a railroad, while passing from the cars to the depot, is not required to exercise that degree of care in crossing the railroad track as is imposed upon other persons, and that he has the right to assume that the company will discharge its duty in making the way safe; and, relying on this assumption, may neglect precautions that are ordinarily imposed upon a person not holding that relation. And this distinction is to be taken into consideration in determining the propriety of his conduct."

We do not care to extend this rule to passengers who leave the train at an intermediate station at a place other than that used by the carrier for the ingress and egress of its passengers. One who leaves the train at a point not intended for the discharge of passengers, and while the train is standing for some other purpose, must himself assume all the ordinary risks incident to his action. The cases above cited differ from the case at bar in the fact that the passenger left or boarded the train at its regular stopping place, and at the point where passengers were regularly received and discharged.

In the case now under consideration no stop was made to receive or discharge passengers. The train was not run to the depot platform but was side-tracked to allow the passage of the west-bound train. It is probably true that parties who desired either to board or leave the train at Alvo, and who were aware of the custom of the train to side-track at that point to allow the west-bound train to pass, took advantage of the opportunity thus offered to take passage on the train, or to leave it while standing on the side track; but no inducement to do this was extended by the company, as the evidence discloses that it refused to sell tickets to passengers who desired to take this train at that station. Those on the train must have

known that the stop upon the side track was not for the purpose of receiving or discharging passengers, and those who left the train without any express or implied invitation so to do on the part of the company and without some known reason requiring them to do so, should in all reason, assume the natural and ordinary risks of their own voluntary action. A part of the fourth instruction of the court expresses so clearly our views upon this question that we insert it here: "If you find from the evidence that when the said Emanuel Leveroni left his car while standing on the side track at Alvo, Nebraska, he did so without the invitation of the defendant, either express or implied, and not for the purpose of attending to any personal want of his own, usually incident to a through passenger, nor made necessary by the manner in which the defendant's train was operated, then it was his duty while absent from said train, to exercise ordinary care to avoid any injury to himself, and if you find from the evidence that while so absent from his car he failed to exercise ordinary care, and was injured through his failure so to do, then the defendant would not be liable."

Having now defined what we believe to be the rights of a passenger at common law, we will proceed to examine our statute relating to injuries received by passengers while being transported over a railway, and the questions discussed in the briefs of counsel in the light of that statute.

Section 3 of chapter 72 of our Compiled Statutes is as follows: "Every railroad company, as aforesaid, shall be liable for all damages inflicted upon the person of passengers while being transported over its road, except in cases where the injury done arises from the criminal negligence of the person injured, or when the injury complained of shall be the violation of some express rule or regulation of said road actually brought to his or her notice." In *Chicago, B. & Q. R. Co. v. Landauer*, 39 Nebr., 803, it was held that this statute made a common carrier an insurer of the safety of its passengers, except as against the gross

negligence of the passenger, or his violation of some rule of the carrier brought to his notice; but up to this time this court has not been called on to determine the particular persons or class of persons taking passage with a railroad company, who were intended by the legislature to be included in the phrase "passengers being transported over its road." The plaintiff in error insists that the statute was not intended to cover all cases of injuries to passengers, and its position on this question can not be more clearly or briefly stated than by quoting from its reply brief:

"Although no one but passengers can be brought within the section, yet it is not designed to cover injuries to all passengers. By express provision, as clear and positive as language will permit, the section carved out of the general body of passengers of a company, the particular class thereof to which it applies. 'Every railroad shall be liable for all damages inflicted upon the person of passengers' (so reads the section) 'while being transported over its road.' The liability imposed by this section, with respect to injuries to passengers, extends only to those injuries which passengers receive while such passengers 'are being transported over its road.' The clause 'while being transported over its road' is a clear limitation modifying the general word 'passengers' in the section. Therefore, to bring a case within this section, it must be shown that when the injury was received by a person he was not only a passenger, but that at the time of the injury he was, as such passenger, 'being transported over the line of the railroad company.' There is, of course, a manifest reason for this qualifying clause. The purpose of the act was to relieve the passenger injured 'while being transported over the line of the company' from the necessity of specifically proving the act of negligence which caused the injury. The passenger who buys a ticket and takes his seat upon the train, may know that the court will presume that any injury which he receives on account of the operation or management of the train, will be presumed

to be attributable to negligence on the part of the railroad company. The train and all agencies connected with its management belong to the railroad company. All knowledge with respect to the cause of injuries resulting from the operation or management of the train is known to the company, but these causes may be difficult for an injured person to ascertain. The section was designed to relieve the passenger, so injured, from the necessity of proving the specific act of negligence. This manifest reason for the adoption of this section shows the purpose of the insertion of its provision 'while being transported over its road.' After a person leaves the train provided for his transportation, then whatever dangers he encounters are dangers not connected with the operation and management of his train; and if he is injured he must prove negligence, and recover, if at all, upon the common-law liability. While riding upon the train provided for his transportation, he may not be able to learn the cause of an injury so received, due to the operation and management of the train. Therefore, as was said, this section was provided to relieve him of the necessity of proving such acts. But when the passenger leaves the train provided for his transportation, and is injured by reason of dangers entirely disconnected from the operation and management of his train, then there will be no difficulty in his ascertaining the cause of his injury, and in alleging and proving it in case of suit. Therefore the legislature did not intend that the presumption of negligence provided by the section should apply to such a case; and, to make the meaning clear, the legislature expressly made the section apply not to injuries to all passengers, but to injuries received by passengers 'while being transported over the road of the company.' The legislature having expressly limited the operation of the statute to the cases of injury received by passengers 'while being transported over the road of a company,' this court can not obliterate the qualifying clause referred to. This court, in construing this statute, must give effect to every provision thereof.

When the legislature expressly limited this section to cases of liability for injuries to those passengers only who were injured 'while being transported over the road of a company,' this court has no power or authority, nor will it have any inclination to nullify the express will of the legislature and to extend this section to cases which the legislature expressly excluded from its effect."

We are agreed that the words "while being transported over its road" is a qualifying phrase, intended to limit liability on the part of the company, and that we must give it the force intended by the legislature. We can not, however, agree with plaintiff in error that it was intended to exclude all passengers who leave the car provided for them by the carrier. It is well known that many—perhaps most—roads provide eating houses and other accommodations for the comfort or convenience of their patrons, and that regular stops are made for meals, requiring the passengers to leave the car in which they are being transported, and often to cross numerous tracks on their way to and from the car to the dining room or restaurant. In such cases one does not lose his character as a passenger in the course of transportation over the road, or the protection of the statute. The duty of the company to provide him safe egress and ingress for such necessities as are required on his journey, and which the road assumes to furnish, and which it invites him to partake of, is no less stringent than to furnish him safe passage on its cars. While seated in the dining room of the company he is under its control, and must conform to its rules, as fully as while on the train; and while thus subject to the rules and regulations of the company, he is their passenger, entitled to like protection from damage from the operating of the road as while seated in the car, proceeding on his journey. We believe and hold that it was intended to include in the words "while being transported over its road" all passengers actually on the train, whether the same is in motion or standing on any part of the road: and it further includes those passengers leaving the train

for any necessary purpose incident to their journey, such as a change of cars, or to procure refreshments at any point where the same are furnished by the company, and where an express or implied invitation is extended to the passengers to leave the car for that purpose. Where, however, the passenger leaves the car for some purpose of his own, not incident to the journey he is pursuing, and at a place not designed for the discharge of passengers, he can not claim the benefit of this statute, although the company may in such cases, under certain conditions, owe him the duty imposed on carriers by the common law. *Parsons v. New York C. & H. R. R. Co.*, 113 N. Y., 355; *Gulf, C. & S. F. R. Co. v. Morgan*, 64 S. W. Rep. [Tex. Civ. App.], 688. The only evidence offered by the company was that of one witness to show that there was plenty of good drinking water in the car in which the deceased was being carried. All of the testimony relating to the circumstances attending the killing of Leveroni came from the witnesses of the plaintiff below. These witnesses all testify that they distinctly heard the whistle of the train approaching from the east. Most of them testify that they saw Leveroni at the pump. One, a Mrs. Brown, a passenger sitting in the car, says that she saw him ascending the steps of the depot platform with a cup in his hand. All who saw him at the pump say that he filled his cup, but that, before he had time to drink, the whistle of the approaching train was heard; that Leveroni thereupon dropped the cup, and ran in a rapid manner for his train. Mrs. Brown relates what occurred as follows: "He went from the steps to the pump, and pumped water into a tin cup which he had. He dropped it. The whistle blew. That is the first warning he had, I am confident." He left the train of his own volition while standing on the side track, and for a wholly unnecessary purpose. In so doing he abandoned the protection of the statute. The witnesses agree that from the pump the railway track can be seen for the distance of one hundred feet toward the northeast, from which direction the train was approach-

ing. By taking three steps from the pump toward the main line of the road, the view is unobstructed· for a mile or more, and the approaching train could have been seen for that distance. When Leveroni reached the track, running rapidly to reach his car, the train was about fifty feet away, and running at a high rate of speed. The evidence is convincing that Leveroni heard the whistle of the approaching train. It was that which caused him to drop his cup, and to run hurriedly to reach his car. He attempted to cross the track in a diagonal course, running partly in the same direction with the approaching train. This, however, is no reason why he should not turn his head to ascertain the position of the train, and whether it was safe to attempt to cross ahead of it. As we have seen, Leveroni was not, under the circumstances, "a passenger being transported over the road," within the meaning of the above quoted statute. His case must therefore be determined by the·rules of the common law, in accordance with which he must be held to suffer the consequences of his own carelessness and negligence. With full knowledge, or full opportunity for knowing the danger, he left a place of safety on the platform of the depot and ran to his death.

We know of no rule of law that allows a recovery under such circumstances, and we recommend that the judgment of the district court be reversed and the case remanded for further proceedings according to law.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the case remanded for further proceedings according to law.

REVERSED AND REMANDED.