[Birmingham Railway L. & P. Co. v. Jung.]

# Birmingham Railway L. & P. Co. v. Jung.

## Action for Damages to Passenger.

(Decided   April   6,   1909.—Re-hearing denied   May  11,   1909.—49
South. 434.)

1. *Pleading; Amendment; Departure.*—Where the original complaint alleged that the defendant was a common carrier of passengers for hire and that plaintiff while a passenger of defendant was injured, and that his injuries were caused proximately by the defendant's negligence, and subsequently counts were added by way of amendment averring that plaintiff's injuries were proximately caused by the negligence of defendant's servants or agents while acting within the line and scope of his employment in and about the carriage of plaintiff as a passenger, and that the plaintiff was injured proximately by the wilful conduct of defendant's servants or agents acting within the line and scope of their employment in and about carrying plaintiff as a passenger, which conduct consisted in causing a car to be set in motion with the knowledge that plaintiff would probably be injured thereby, and with reckless disregard of the consequences, etc., the original and the amend counts were in case and the amendment constituted no departure and was properly allowed.

2, *Same; Relation Back.*—Where a complaint is properly amended, the amendment relates back to the commencement of the action.

3. *Carriers; Injury to Passengers; Pleading.*—The complaint sufficiently alleges the defendant's negligence where it charges a failure to give plaintiff sufficient time to resume his place in the car after he had alighted at the siding where the train stopped.

4. *Same; Taking up Passengers.*—When a car stops at a place where it is necessary for a person to take passage it is the carrier's duty before moving the cars to use due care to see that no person is in the act of boarding the same; if the place is not one where it is customary to take up passengers but the car stops and a passenger receives permission of the conductor to leave the car temporarily, it is the duty of the conductor before moving the car to exercise due care to know that the passenger is not in the act of re-entering the car or in a position which would render the moving of the car perilous; but if the place where a car is stopped is not one where passengers are received, the carrier does not breach its duty to one attempting to get aboard by moving the car while he is in a perilous position, unless the servants in charge of the car know that by moving the car the passenger's position is rendered perilous.

5. *Same; Authority of Conductor.*—A conductor is a representative of the carrier in charge of the train or car, and usually controls the operation thereof, and he acts within the scope of his authority if he grants permission to a passenger to temporarily

[Birmingham Railway L. & P. Co. v. Jung.]

leave the train while it is stopped at a place where it is not customary to receive passengers.

6. *Same; Boarding Moving Car; Contributory Negligence.*—It is not negligence as a matter of law for a person to attempt to board a moving car except under special circumstances, such as infirmity or being encumbered with bundles or when the train is moving at too great speed.

7. *Same; Wanton or Wilful Negligence; Evidence.*—Actual knowledge of the peril of the passenger sufficient to render a carrier guilty of wanton negligence need not be positively and directly shown but may be shown by facts and circumstances from which such knowledge may be legitimately inferred; the evidence in this case stated and examined and held to require a submission to the jury of the question as to whether or not the carrier's servants were guilty of wanton or wilful misconduct, in and about the carriage of the passenger.

8. *Same; Instructions.*—If permission had been granted plaintiff to leave the car temporarily and there was evidence from which it could be inferred that plaintiff tried to catch the first car and was injured by the last car catching his foot, a charge asserting that plaintiff could not recover unless the jury were satisfied that when the train was signalled to go forward, plaintiff was in the act of boarding the car and was injured by the train starting while he was in that position, is properly refused for disregarding the inference from the evidence that the car was in motion when the plaintiff attempted to board it, and as disregarding the duty resting on the conductor to know before causing the train to be started that plaintiff was not in the act of boarding it.

9. *Appeal and Error; Presumption.*—This court will not presume on appeal that the conclusions reached by the jury on issues of fact are against the weight of the evidence.

10. *Negligence; Contributory Negligence; When Available.*—Contributory negligence is not available to defeat a charge of wilful or wanton misconduct.

11. *Same; Acts Constituting.*—Wanton or wilful misconduct of the servants of the carrier can only be predicated on actual knowledge as distinguished from a mere breach of duty that, had it been observed, would have led to knowledge on the part of the servant of the peril of the person injured, or that from reasonable appearances such person would probably be imperilled by the action the servant was about to take.

12. *Trial; Jury Question; Sufficiency of Evidence.*—The weight and credibility of evidence, is a question left to the jury to determine.

13. *Witnesses; Interpreters.*—An interpreter is a witness for the purpose of interpreting the testimony of other witnesses who do not speak our language, or who cannot speak.

14. *Same; Competency; Jury Question.*—The competency of the person to take the oath prescribed in order to become a witness is a question addressed to the court and not to the jury.

15. *Same; Competency; Burden of Proof.*—The burden of proving a witness incompetent rests upon the party objecting to his competence.

[Birmingham Railway L. & P. Co. v. Jung.]

16. *Oath; Nature and Function.*—An oath is a solemn adjuration to God to punish the affiant for swearing falsely, and it sanctions a belief that the Supreme Being will punish falsehood.

17. *Charge of Court; Correcting Previous Instructions.*—Although a charge standing alone is error, the error is rendered harmless in giving it, if when considered with other instructions and as explained by them it is corrected.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by Hendry Jung against the Birmingham Railway, Light & Power Company. Judgment for plaintiff, and defendant appeals, Affirmed.

The original first count was in the following language: "Plaintiff claims of the defendant, a body corporate doing business as a common carrier of passengers for hire in Jefferson county, Ala., $30,000 damages, for this: That on, to wit, January 10, 1904, plaintiff, while a passenger of defendant en route from Bessemer, in Jefferson county, state of Alabama, to Birmingham, in said state and county, was injured, in said state and county, as follows: Plaintiff's left knee was crushed, and his left leg crushed and mangled, thereby necessitating amputation at the knee joint, inflicting upon plaintiff excruciating physical and mental pain, suffering, and agony, causing plaintiff to endure for the remainder of his natural life great inconvenience and mental disquietude, and permanently rendering plaintiff less able to earn a livelihood. Plaintiff avers said injuries to have been caused proximately by the negligence of defendant in and about carrying plaintiff as a passenger, all to plaintiff's damages as aforesaid." The amended counts 2 and 3 are as follows: Count 2: Same as count 1, down to and including the words "less able to earn a livelihood," with this added averment: "Plaintiff avers said injuries to have been proximately caused by the negligence of the servant or agent of defendant while acting within the line and scope of his

employment in and about the carriage of plaintiff as a passenger of defendant." Count 3: Same as 1, through the allegation of injury, with the added averment that "said injuries were proximately caused by the wanton, willful, or intentional conduct of the defendant's serants or agents while acting within the line and scope of their employment in and about the carriage of plaintiff as a passenger of defendant, which willful, wanton, or intentional conduct consisted in this: The servant or agent aforesaid wantonly, willfully, or intentionally caused a car to be set in motion, with the knowledge that plaintiff would probably be injured thereby, and with reckless disregard of the consequences."

Demurrers raised the points that the allegations of the count are vague, uncertain, and indefinite, and that no facts are averred showing wherein or how the defendant is guilty of negligence in and about carrying plaintiff as a passenger, and that the averments of negligence are too general to put defendant on notice.

The following portion of the oral charge was excepted to: That noted in assignment 7 is as follows: "If, however, you are reasonably satisfied from the evidence in the case that he got off the car without the consent or permission of the conductor, and was in the act of boarding it, and attempting to board it, and the conductor, with the degree of reckless indifference that would be the equivalent of a willful or intentional injury, started the car, and he was injured, and that was the proximate cause of his injury, then the plea of contributory negligence would not be an answer to that phase of the case." In assignment 8: "Now, there are two or three theories of law, gentlemen, that arise at this juncture of the case, by which plaintiff may recover, if you are reasonably satisfied that he is entitled to recover in any aspect of the case, and that law is that

even if that car was not stopped there for the purpose of
allowing passengers to get on or off—that is, if it was
stopped there for meeting and allowing another car
to pass—and if you are reasonably satisfied that the
conductor did allow him to get off for the purpose I
have spoken about, why then it would have been (if
the conductor knew it, it would have been) the duty
of the conductor to give him a reasonable opportunity
to get on the car again, and it would have been the duty
of the conductor to see and know that he was not in
the act of boarding the car before moving it, and it
would have been his duty to see and know that he was
not in a position of peril in attempting to board the car
before moving it." In assignment 9: "If you are rea-
sonably satisfied that the conductor did allow him to
get off for that purpose, and if you are reasonably sat-
isfied the conductor did not give him a reasonable op-
portunity to get back, and if you are reasonably satis-
fied that while plaintiff was in the act of boarding the
car that he signaled it forward, and it did move for-
ward while he was in the act of boarding it, why the
plaintiff would be entitled to recover on the theory of
simple negligence."

The following charges were refused to the defendant:
(1) "I charge you that there is no evidence in this case
that the defendant's conductor knew that the plaintiff
was boarding the car, if you believe that he was in that
position." (2) "I charge you that the plaintiff cannot
recover in this case, unless each member of the jury
is reasonably satisfied from the evidence that when the
train was signaled to go forward, and actually started
forward, the plaintiff was in the act of boarding the
car, and was injured by reason of the train starting
while he was in that position." (3) Affirmative charge
as to the first count. (4) affirmative charge as to the

third count. (5) affirmative charge as to the second count. (6) "I charge you, gentlemen of the jury, that you cannot find for the plaintiff unless you and each of you are reasonably satisfied from the evidence that the conductor knew that the plaintiff was in the act of boarding the train when he signaled it to go forward." (7) "If the plaintiff attempted to board the train while it was in motion, then I charge you that he cannot recover." (8) "Under the facts in this case, the law does not impose the duty upon the conductor of seeing and knowing that the plaintiff was not in a position of peril before starting the train." (9) "You cannot find a verdict for the plaintiff unless you and each of you are reasonably satisfied from the evidence that when the car started the plaintiff was in the act of boarding the car."

TILLMAN, GRUBB, BRADLEY & MORROW, for appellant. The court erred in overruling appellant's demurrer to the 1st count of the complaint.—*N. Bir. Ry. Co. v. Calderwood*, 89 Ala. 254; 14 Ency P. & P. 333-4; 15 Id. 1132-34; 16 Id. 376; *N. Bir. Ry. Co. v. Liddicoat*, 99 Ala. 541. On these same authorities the court erred in overruling demurrers to the 2nd count. The court should not have overruled demurrer to the 3rd count.— *Bir. Ry. L. & P. Co. v. Jaffe*, 45 South. 471. The court should have given charge 2 requested by the defendant. — *A. C. G. & A. Ry. Co. v. Bullock*, 47 South. 578; *C. of Ga. v. McNabb*, 150 Ala. 343 The defendant was entitled to the affirmative charge as to the 3rd count on two theories. 1st, want of evidence of knowledge on the part of the conductor.—*Southern Ry. Co. v. Bush*, 122 Ala. 486; *Nave v. A. G. S.*, 96 Ala. 264; *Tinney v. C. of Ga.*, 129 Ala. 523. 2nd, because it constituted a departure from the original count.—*Nelson v. 1st Nat. Bank*, 139 Ala. 578. The court should have given the

7th charge.—*C. of Ga. v. McNabb,* 150 Ala. 354, and
cases there cited.   The court should have granted a
new trial.—*Bir. Ry. L. & P. Co. v. Owens,* 135 Ala. 154.

DENSON & DENSON, for appellee.   The record is with-
out evidence of contributory negligence on the part of
the plaintiff.—*N. Bir. Ry. Co. v. Liddicoat,* 99 Ala. 551.
The defendant is not entitled to the affirmative charge
as to the 3rd count.—*L. & N. v. Smith,* 129 Ala. 560;
*L. & N. v. Webb,* 90 Ala. 200; *C. of Ga. v. Partridge,*
136 Ala. 596. There is evidence in the record from which
the jury could infer that the conductor saw the condition
of peril in which plaintiff was placed.—*Southern Ry.
Co. v. Shelton,* 136 Ala. 214; *Ensley Ry. Co. v. Chewn-
ing,* 93 Ala. 31; *L. & N. v. Trammel,* 93 Ala. 45.

McCLELLAN, J.—The complaint, after amendment,
contained four counts, the last of which was removed
from consideration of the jury by instruction of the
court.   The original first count is in case, and those add-
ed by amendment  are also  in case, thus  distinguish-
ing the pleading in this action from that considered and
treated in *Freeman v. Central of Ga. R. R.,* 154 Ala. 619,
45 South. 898, where the departure attempted was from
trespass to case.   The amendment here was properly
allowed, and had relation back to the commencement
of the suit.—*Highland A. & B. R. R. v. Sampson,* 112
Ala. 425, 20 South. 566.

The first three counts of the complaint were suffi-
ciently definite in averments of culpable negligence, un-
der our repeatedly declared rule.   The pleas were the
general issue and contributory  negligence;  but,  of
course, the latter defense was not available against the
charge of willful or wanton misconduct producing the
injury.

[Birmingham Railway L. & P. Co. v. Jung.]

The plaintiff took passage on the interurban cars of the defendant from Bessemer to Birmingham. These cars traversed a distance of about 15 miles between the two cities, but were without closets for the convenience of passengers. The plaintiff, who was the only witness testifying to the circumstances of the injury itself, thus described it: "The car was stopped there; had stopped at the time he got off; went to get back on the car, and had one foot on the steps and one foot on the ground, and his hand on the car handle, and the bell rung, and the car run, and the last car caught his leg, the colored peoples's car. He was riding in the first car. He tried to catch the first car, and the last car caught his leg. He tried to get on the back end of the first car." The conductor testified that he knew nothing of the plaintiff's desire or intention to leave the car, nor of his leaving it, nor that he knew anything of the injury until some time afterwards. There was testimony for the plaintiff tending to corroborate him in the respect that he sought and secured the consent of the conductor to leave the then stationary car to urinate.

It was shown, without conflict, that the car in question had taken this siding for the purpose of permitting an opposing train to pass, and that this place was not a regular or scheduled station for the reception and discharge of passangers, unless as appellee contends, the custom or usage, stated by the conductor, which we will set out later, brought this place within the class defined, raising the duty thus declared in *North Birmingham R. R. v. Liddicoat*, 99 Ala. 545, 549, 13 South. 18, 19: " If, however, a carrier is in the habit of receiving or discharging passengers at a place other than a regular station, * * * they have the right to presume that it is safe to board or quit the train at such place, unless the risk in doing so is so obvious that a man of

ordinary care and prudence would not, under like cir-
cumstances, make the attempt. * * *It is immaterial
for what purpose its cars are stopped at such place,
other than a regular station, whether in consequence of
a duty enjoined on it by law, as when approaching the
track of an intersecting road, or arising from conven-
ience or necessity in the usual mode of operating its
trains. If the public are in the habit of entering or
quitting its cars at such place, without objection from
its agents or servants, such persons are entitled to the
protection of all the duties imposed upon the carrier in
receiving and discharging passengers at its regular
station, except in so far as it may be relieved therefrom
by obvious risks, incident to the nature and condition
of such place of customary use."

The testimony, to which we referred above in this
connection, was that "people sometimes get on the car
at that place, if they are there when the car stops; but
passengers do not come there and wait for cars. It is
a very rough place. I have been running there seven
years, and maybe I have seen a half dozen people in that
seven years get on at that place. The cars do not stop
for them there. If the cars are on schedule time, they
do not stop at all. They stopped on this occasion two
or three minutes. When it stops, and people are quick
enough to get on before it starts, they get on it, if they
should happen to be coming along the track. Passen-
gers get on there if they are there when the car stops.
* * *" Upon the evidence presented by this record, pre-
termitting for the present consideration of the assert-
ed contributory negligence of the plaintiff, the plain-
tiff was entitled to have submitted to the jury the two
issues growing out of two theories leading to possible
recovery for the injury suffered:

First. If the theretofore existing relation of passenger and carrier had been terminated by the departure of the plaintiff from the car, for the breach of duty in starting the cars in question while plaintiff was in the act of boarding the car at a place whereat it was customary for persons to take passage on defendant's cars, as defined in *Liddicoat's Case, supra,* the duty at such place embracing the obligation to exercise due care and prudence to see and know, before moving the cars, that no person was in the act of boarding the same at that place.—*H., A. & B. R. R. v. Burt,* 92 Ala. 291, 9 South. 410, 13 L. R. A. 95. Second. If such place was not one whereat it was customary to receive passengers, within the rule declared in the *Liddicoat Case, supra,* then, for the breach of the duty raised by the consent of the conductor in permitting the plaintiff to temporarily leave the stationary car for the purpose before stated. This duty also embraced the obligation on the part of the servants or employes of the defendant, in charge of the cars, to exercise due care and prudence to see and know, before moving the car, that this plaintiff was not in the act of re-entering the car or "otherwise in a position which would be rendered perilous by a movement of the car."—*H., A. & B. R. R. v. Burt, supra; Sweet v. B. R. & E. Co.,* 136 Ala. 166, 33 South 886. In either event, if the jury affirmatively, to the requisite degree, so concluded from the whole testimony before them, and the injury was the proximate consequence of negligence in either form, the plaintiff was due a recovery. On the contrary, if the jury found that such place was not, by custom, brought within the rule announced in *Liddicoat's Case supra,* then the duty existing toward persons intending bona fide to become passengers at a proper place for taking the cars did not obtain, to require the care and prudence defined with respect to the obligation

to see and know, before moving the cars, that no person was in the situation mention in *H., A. & B. R. R. v. Burt, supra;* and hence no breach of duty toward this plaintiff, unless the servant or agent directing movement of the car, and before or at the time of so doing, knew of plaintiff's perilous position, or knew that by such movement of the car his position would probably be rendered perilous.

With respect to the first theory, as we number them, leading to alleged liability, it is seen that, even if the plaintiff in leaving the car ceased to be a passenger, or severed the relation, the duty stated, if the place was one at which persons customarily entered the cars of the defendant when they stopped there, required the observance of the care and prudence before mentioned, regardless of whether the conductor consented to or knew of the departure of the plaintiff. With regard to the second theory of asserted liability, the legal inquiry presented involves the question whether, if the conductor consented to the temporary departure, implying an intention and understanding that a re-entry of the stationary conveyance would be attempted, the relation of passenger and carrier was wholly terminated. Necessarily it was not terminated if the conductor was, under the circumstances, authorized by the general powers possessed by him, for the carrier, to bind the carrier by so consenting to a continuance of the relation existing at the time such consent was given. If such consenting was within the general scope of the conductor's authority, obviously the correlative duty prevailed to bring to the performance of his duty with respect to the starting of the train that degree of care and prudence in the movement of the cars owed to passengers temporarily absenting themselves from the conveyance at regular stations, for proper purposes, in re-

entering the conveyance. Of course, we must not be understood as declaring the duty vel non, or its extent, while the passenger is absent from the train, but to announce that given the consent by an authorized agent, in control of the train that a passenger temporarily leave a stationary train, and implying the resumption of his place therein, the duty is the same as at a regular station, where, for instance, passengers customarily absent themselves without objection of the carrier, to observe the highest degree of care the situation and circumstances will permit to see and know that such passenger is not, before the train is started, in the act of boarding it, or in a position which would be rendered perilous by a starting of the cars. In temporarily leaving the car at the regular places we have referred to the passenger remains such, certainly and in all cases of that character, for the purpose and to the extent of raising the duty on the servants of the carrier to exercise the care and prudence stated to see and know before starting the cars that such passenger is not in the position described.

The reason this duty obtains toward passengers already accepted at regular stations is that the carrier invites the passenger to leave the carriage for this probably necessary purpose, and to necessarily imply thereby that the return of the passenger to his place will be conserved in safety by a requisite diligence to note his position with regard to the train before moving it. That the reason wholesomely raises the duty is apparent. Assuming for the present the authority of a conductor to bind his master by consenting to a temporary departure, for a necessary purpose at least, of a passenger from the train at a place not a regular station by schedule or custom, we can see no distinction in principle between the duty stated towards passengers in ref-

erence to moving the train at a regular station, and where it is, for a purpose other than to accept or discharge passengers, stopped. In both, the invitation and implied assurance of the declared care for a return of the passenger are the same. In one, the invitation and implication are general. In practice, in the other, they are specific, sought, are extended, and acted on as upon an occasion. In each, the carrier induces the action of the passenger; and in each, it would be alike unreasonable, unjust, and in qualification of the high duty due a passenger from the carrier, to acquit carrier's representatives of obligation to observe all the care and prudence the situation would reasonably permit in conservation of the passenger's safety from the moving of the car. We are aware of no authority in point here, but the conclusion reached is sustained, we think, in the principle, invoked in analogy, illustrated in the following authorities and those therein cited: *C. R. & P. R. R. v. Sattler,* 64 Neb. 636, 90 N. W. 649, 57 L. R. A. 890, 97 Am. St. Rep. 666; *M. P. R. R. v. Foreman,* 73 Tex. 311, 11 S. W. 326, 15 Am. St. Rep. 785; *Frost v. Grand Trunk R. R.,* 10 Allen (Mass.) 387, 87 Am. Dec. 668; *Sweet v. B. R. & E. Co.,* 136 Ala. 166, 33 South. 886; *Lemery v. G. N. R. R.,* 83 Minn. 47. 85 N. W. 908; *Patterson v. O. C. & B. R. R.,* 90 Iowa, 247, 57 N. W. 880; *Parsons v. N. Y. R. R.,* 113 N. Y. 355, 21 N E. 145, 3 L. R. A. 683, 10 Am. St. Rep. 450; *Galveston Ry. Mathes* (Tex. Civ. App.) 73 S. W. 411; *Ala. R. R. v. Coggins,* 88 Fed. 455, 32 C. C. A. 1; *Montgomery R. R. Co v. Stewart,* 91 Ala. 421, 8 South. 708; *Watson v. Oxanna Co.,* 92 Ala. 320, 8 South. 770; 6 Cyc. p. 617, note 75; *Abbot v. Oregon R. R.,* 46 Or. 549, 80 Pac. 1012, 1 L. R. A. (N. S.) 851, 114 Am. St. Rep. 885.

There can be, we think, no serious questioning of the conductor's power to raise the duty declared with

respect to care for the re-entry of the passenger. He is the representative of the carrier in charge of the train. He controls the operation thereof. He is the highest officer on the train with whom the passenger may deal. His duties with reference to the comfort and safety of the passengers are multiform. In a large sense he is the guardian of the safety of his passengers. Presumptively this train could not properly move without his order. In emergencies he has extended powers and duties correlative therewith. The cars were without closets, and, according to the evidence adduced for him, the plaintiff decided to leave the stationary car for a purpose of natural necessity, and he sought the permission of the conductor to step aside, stating the reason to him, and the consent was given. In *Sweet v. Railroad, supra,* and in *Montgomery R. R. v. Stewart, supra,* the operation of the train by the agents or servants of the defending carriers was pronounced sufficient to predicate a breach of duty to liability. Much stronger must be the care when the express assurance of the conductor has led the passenger to a course of conduct out of which the injury grows.

The defense of contributory negligence was, on the state of evidence shown by this record, an issue for the jury, since, if it should be found, from the testimony, as it might have been by the jury, that the plaintiff undertook to board the car while it was moving, it is well settled that in the absence of special circumstances, such as the party's infirmity, or being incumbered with articles, or the speed of the train, it cannot, as a matter of law, be said to be negligence in one to attempt to board a moving train. The general rules in this regard have been so often stated by this court that there is no occasion to elaborate them.

Count 3 ascribes the plaintiff's injury to the wanton or willful misconduct of the defendant's agents or servants. Charge 4, refused to defendant, affirmed that, under the evidence before the jury, if believed, there could be no recovery on the third count. To warrant the submission to the jury of the issue presented by the third count, it was essential that there be introduced testimony tending to show knowledge, as distinguished from a mere breach of duty that, had it been observed, and not breached, would have led to knowledge, on the part of the derelict agent or servant, of the peril of the party injured, or that, from reasonable appearances, he would probably be imperiled by the action to be or that was taken. It cannot be that a willfulness or wantonness accompany an act—give it character—unless there be brought to the party charged with committing the wrong knowledge of the danger present or impending to the other party. We understand this to be the rule repeatedly announced by this court and not controverted by appellee here.—See 5 May Dig. pp. 711-714. That this knowledge, as a predicate for the imputation of the aggravated wrong pleaded in the third count, may be shown, and becomes thereby a jury question, as any other fact from which knowledge may be reasonably inferable, is thus declared in *Southern Ry. v. Bush,* 122 Ala. 487, 26 South. 173: "While wantonness on the part of an engineer cannot be predicated on the mere fact that he ought to have seen the deceased on the trestle, or any thing short of actual knowledge, yet his actual knowledge need not be positively and directly shown, but, like any other fact, may be proved by showing circumstances from which the fact of actual knowledge is a legitimate inference. Otherwise, in cases of this character, this fact could never be proved, except by the testimony of the engineer himself." The court,

following the appropriated expression, enumerated the facts and circumstances upon which it pronounced. They were that the track was straight and unobstructed in view for a long distance, and that the engineer was in his seat looking ahead along the track, and that there was nothing to hinder his sight of a person on the track a few hundred feet ahead. It was said, in caution, that these facts and circumstances might warrant the jury in inferring the fact of actual knowledge on the part of the engineer, but from them there was no presumption that he did see Ora Bush on the track. It further appeared from the testimony that the party was on the track.

Originally, the opinion was entertained that there was an entire want of evidence, or reasonable inference, fairly leading, in any aspect of the case, to the conclusion that plaintiff's injury was traceable, in proximate cause, to wanton or intentional misconduct on the part of the conductor in signaling the starting of the car; the reason being that no such actual knowledge of plaintiff's then position of peril within the stated rule, in such cases, was shown to have been possessed by the conductor. This conclusion necessarily resulted in the reversal of the judgment because of the failure of the court to give charge 4. On further consideration, invited by application for rehearing on this feature of our ruling, the error of this conclusion appears, and the opportunity to now correct it is welcomed. The inquiry, under the third count, was properly submitted to the jury, and the *Burt Case, supra,* affords authority for the conclusion. The testimony of the plaintiff has been before quoted. That, in part, of the conductor will suffice to show the ground on which our later conclusion is based. He testified: "* * * I signaled my car ahead. I was then on the back platform of the moter car, and *there*

*was no one in sight at that time.* Every one seemed to be on the car, and every one was perfectly quiet. I did not see any of the passengers trying to get back on, and did not know that any passengers had gotten off. I had to stand in about 24 inches of the right-hand side of the platform to ring the bell, and the car was lighted. * * *" (Italics supplied.) We are not, of course, on this phase of the case, concerned with the weight and credibility of the evidence. That, under all the issues raised by the three first counts and the pleas thereto, was for the jury.

The quoted testimony of the conductor, especially the feature of it italicized by us, shows his favorable position, at the time of giving the signal, to see plaintiff, and his situation with respect to his peril vel non. If plaintiff's testimony in one aspect is credited he was then (at the time the signal was given) in the act of boarding the car within a very short distance of the conductor. The conductor states that there was no one in sight when he gave the signal. The affirmation of this asserted fact necessarily justifies the inference possible to be drawn by the jury, that he looked. There is no escape from the possible and very rational impression, from this statement of fact, by the party concerned himself, that he could and did survey the rear of the car, and there was no one there, and so, notwithstanding other phases of his testimony, tended to refute this inference, or to deny the circumstances as the plaintiff detailed them. Besides, on cross-examination, the conductor said: "* * *From the conductor's position on the back platform, I can see the back end of the car and have a full view of it, standing right there over it, right by it. * * *" If the jury, as they might have done, concluded that the conductor saw the plaintiff's situation, as the plaintiff asserted it was, when he signaled

the starting of the car, then the next condition to the imputation of wanton or willful misconduct to the conductor in his said act of signaling the starting of the car was likewise a jury question, under all the facts and circumstances of the event. We therefore hold that there was no error in refusing charge 4, requested by the defendant.

Several of the assignments of error relate to the competency, on account of religious belief and training, of the plaintiff, of Charlie June Forg, and of Jung Lum to take the oath essential to qualify as a witness in this state. All are Chinese. Forg was presented as an interpreter for the plaintiff.—Code 1896, § 1793. An interpreter is a witness for the purpose indicated by the descriptive word.—*Peoulc v. Lem Deo,* 132 Cal. 199, 64 Pac. 265. In *Blocker v. Burness* 2 Ala. 354, the attitude of this court on the subject in hand was thus early delivered: "An oath is a solemn adjuration to God to punish the affiant if he swears falsely. The sanction of the oath is a belief that the Supreme Being will punish falsehood; and whether that punishment is administered by remorse of conscience, or in any other mode in this world, or is reserved for the future state of being, cannot affect that question, as the sum of the matter is a belief that God is the avenger of falsehood."—See *Beeson v. Moore,* 132 Ala. 391, 31 South. 456. The competency of a person to take the prescribed oath, to become a witness, is, of course, a question for the court; and upon the objector to competency rests the burden to sustain it.—1 Green. Ev. §§ 369, 370. The examinations, voir dire, of witnesses, were elaborate; counsel for both sides and the court propounding many questions. The court resolved the matter against the objector (defendant.) We cannot set out the responses on these examinations. They would consume too much space.

[Birmingham Railway L. & P. Co. v. Jung.]

We must be content with this statement and ruling, based upon a careful consideration of the record in this regard. That while these persons evinced, in some particulars, crude and perhaps absurd ideas with respect to their belief of the source of the Godhead, they gave, in general, unmistakable evidence of a belief in the existence of the Godhead and that God was the "avenger of falsehood." On the whole we cannot pronounce the ruling of the court below, holding these persons to be competent to take the oath, to have been erroneous.

Coming to the assignments based on the oral charge of the court and of the special charges refused to the defendant: We find no merit in any of these assignments. Three of them assail the oral charge. Those portions of the oral charge set out in assignments 8 and 9 are justified in correctness by what we have said in the general treatment of the law of the case. That portion of the oral charge set out in assignment 7 might be subject to criticism, if considered disassociated from that part of the oral charge, appearing in this record, wherein wanton or intentional misconduct was described; but when considered in that connection, and as thereby explained, no error was committed.

Special charges 1, 3, 4, 5, 6, 7, and 8, were properly refused to defendant under the view of the law of the case stated before.

Special charges 2 and 9 sought to hinge the right of recovery upon the hypothesized fact that the car was entirely stationary at the time plaintiff undertook to board it. From that phase of the plaintiff's testimony, wherein he says "he tried to catch the first car, and the last car caught his leg," it was open to inference by the jury that the car was in motion when he undertook to board it. These charges pretermit the effect of the stated inference, if drawn, as might have been done by

the jury. Besides, they pretermit the duty resting on the conductor to see and know, before causing the train to be started, that plaintiff was not in the act of getting aboard thereof, provided the jury found that permission to temporarily leave the car, for the purpose stated before, had been given plaintiff by the conductor. The motion for a new trial was, in consequence, properly overruled. The issues of fact were for the jury, and we cannot presume their conclusion palpably opposed to the evidence or its weight.

We are of opinion that there is no error in the record, and the judgment is therefore affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON, ANDERSON, MAYFIELD, and SAYRE, JJ., concur.


## *Action for Damages to Passenger.*

