13 So.2d 579

### LAMBERT v. BIRMINGHAM ELECTRIC CO.

6 Div. 130.

Supreme Court of Alabama.

May 20, 1943.

334

Lange, Simpson, Brantley & Robinson, of Birmingham, for appellee.

Harsh, Harsh & Hare and J. Haran Lowe, of Birmingham, for appellant.

THOMAS, Justice.

The appellant, plaintiff below, Miss Dora Lambert, sued the Birmingham Electric Company for damages on account of injuries received while she was alighting from a street car. Plaintiff's evidence tending to show that the doors were closed on her foot and that the car moved forward or jerked suddenly while she was still on the car but descending from the steps is conflicting, defendant's evidence tending to show that she fell after she reached the ground. Plaintiff's injuries consisted of a severe sprain of her left ankle and internal bleeding and persistent swelling. The jury found a verdict for the defendant. Motion for a new trial was overruled by the trial court.

The case was tried on the simple negligence count and a plea in short by consent including contributory negligence. The trial judge gave the general affirmative charge as to count B declaring for wantonness in operating the car from which plaintiff was alighting as a passenger. .

The plaintiff Miss Dora Lambert testified that she was employed in Mansfield Hat Shop at Third Avenue and Eighteenth Street in Birmingham, Alabama, a position which required her to be constantly on her feet. That she got off from work at 6 o'clock on October 4, 1941, and boarded a street car operated by the Birmingham Electric Company as a passenger, paid her street car fare and just about the time the street car stopped at Ione Station she told the conductor she wanted to get off. The conductor was standing at the platform and the street car stopped and the doors were opened when she got to the door and the car was still. As she started to get off the street car she had one foot on the ground and the car gave a jerk and closed the door and caught her heel and jerked her back and threw her to the ground from the street car. She tried to get up, but was unable to stand and fell and struck her head against the telephone post. After plaintiff got to her destination she was carried to the hospital in an ambulance, her ankle was X-rayed and she was sent back home after the doctor had given her medicine to ease the pain. The foot began to swell and hemorrhaged. The doctor bandaged up her foot and she had to keep it elevated and had to stay in bed about three weeks with a cast upon her ankle. She had to walk on crutches for about two months, and was unable to go back to work until March 7, 1942, something like five months after she was injured. Her doctor's bill was $50 and she lost her wages of $15 a week for five months. She suffered pain for a long time and up until time of trial.

The plaintiff's brother W. T. Lambert and Mrs. Lambert testified they were at Ione Station at the time his sister was hurt, but were in his automobile and did not see the accident, and testified as to the condition of her ankle and her suffering as the result of the injury.

Joe Shelby, a witness for the plaintiff, testified that he was standing on the ground near where plaintiff fell; saw her get off the back end of the street car and stated he first saw her when she was on the step when she was fixing to make the next step off the street car and when she was in the motion of putting or fixing to put her foot down the street car jerked off, going forward, and she fell down by the post. He further testified that the street car conductor was about five feet from the door and he further testified that plaintiff was not hurrying off the street car, but was taking her time; that the motion of the car jerked plaintiff off.

Dr. R. M. Kimbrough testified as to the nature and extent of plaintiff's injuries; diagnosed her condition as a severe sprain of the ankle which requires treatment by immobilization in a cast; further that at the time of the trial, about seven months after the accident, her foot was still swelled. He described the injury as involving torn ligaments or muscles.

Mrs. W. Z. Dennis, Mrs. Gardner H. Keller and Mrs. Claude Atcheson all testified about the nature and extent of plaintiff's injury.

Lula Shelby and Kate Dowdell testified for the plaintiff that she was standing on the ground near where plaintiff was hurt and that when plaintiff got to the bottom step to step to the ground from the street car, the street car jerked forward and it threw her off. Florence Brown testified that the car jerked as plaintiff was stepping off to the ground and threw her off the car.

J. M. Moore testified for the defendant that he was running the street car No. 229 on October 4, 1941, out-bound to Ione Station where there had been an accident and a man killed; that G. E. West was the conductor with him and that he had since died. He further testified that he, the motorman, operated the front and back doors manually with a lever and by means of his mirror he could see whether passengers were clear at the back door and that there was a mirror there that night and that he saw the lady get off at a time when the door was open and the street car standing. He further testified that the lady had passed out of his mirror vision before he did anything to the car and that he had not seen anything happen to her at that time and that he closed the door himself.

On cross-examination the witness stated: "You ask me whether I know of my own personal knowledge whether she fell of [off] the street car or not, and I answer I know she didn't fall. * * *" He testified further on cross-examination that: "* * * She stepped right on the step and stepped to the ground. I watched her while she was stepping. I watched her step off the car to the ground. She was walking pretty pertly. She did not appear to be in a hurry. I didn't notice whether she had any bundles in her arms. * * *

I quit look [looking] through my rear vision mirror as soon as I closed my door. I waited there until I looked down in front and seen [saw] those colored people that are here. I saw some. * * * I did not see those negroes through the rear vision mirror. I saw them the same time as I passed by. I did not see anyone pick this lady up. I quit look [looking] through my rear vision mirror as soon as I closed my door. * * * I did continue looking through the rear mirror until the doors were shut and the lady had walked off. * * *" [Brackets supplied.]

Thereupon G. A. Murphy testified for the defendant that he was on the street car on the occasion which plaintiff was hurt at or near Ione Station; that he was by the window on the back platform and that, "The lady didn't get up immediately when the street car stopped. She waited for a few seconds. Then she jumped up and said 'Let me out of here.' * * * She looked like she was awfully excited over something and I thought maybe that was what occurred there. She looked pale. She ran to the back door excited and seemed to be in a big hurry and went out the door in a lunge. The door did not close on the lady that I saw in any way. The street car did not move any while the lady was moving out through the door. After the lady got out of the car and down on the cement or cinders there, I was looking at her. She started and run right into a telephone post. * * * She was going toward the post and looking toward the street. * * * After the door was closed, I would say the car stood there several seconds before it started to leave. * * * I didn't notice anything unusual about its movements."

And on cross-examination the witness Murphy testified as follows: "* * * I heard her say 'Let me off' or 'Let me out of here' and that was when she jumped off. There was no noise in the street car. You ask if there was anything that kept him from hearing that, too and I answer just all the commotion. I heard it. I hear the commission, [commotion], too. She ran. She just ran. She was in a hurry. That was Miss Lambert. She went unusually fast down the steps. She didn't slow down when she hit the steps. The door was open. I had turned around from looking out the back window. I saw her when she stepped down on the first step. I didn't see her clear the car. I saw her after she was clear of the car. The car was standing still. * * * I watched her. When she got off the street car, she came at kind of a forty-five degree angle instead of getting straight off the car. A telephone post was standing back there, back of the street car, and she had to go out through the side and hit the post. When she got up, she got up that far from the door and the door was standing like it was when she came off. The telephone post was about ten feet from the street car that she got off. * * * I did not see any person at all fall to the ground out the door of the street car. * * *"

We come to consider the action of the court in giving at defendant's request in writing certain charges assigned as error. Charge 13, given for defendant, is as follows: "The Court charges the jury that if they are reasonably satisfied from the evidence that the street car did not move while the plaintiff was in the act of disembarking therefrom that you cannot award the plaintiff a verdict for and on account of any claimed or alleged movement of the street car."

The plaintiff's theory of recovery is that the car door closing on her heel, jerked her backward or that the step of the street car folded up and caught her foot, retarding her forward progress in alighting and that she was for such time impeded in such manner as to cause her to fall to the ground. She said: "As I started to step off the car I had one foot to the ground, my left foot had just stepped down and the car gave a jerk and closed the door and caught my heel and jerked me back and threw me right off." The allegations of the complaint as to this were that said servants or agents negligently operated said passenger car of the defendant on the date and occasion of plaintiff's injury as aforesaid, etc. This allegation was sufficient to include as negligent operation the closing of the door or the folding of the step prematurely, and in such manner as to entrap plaintiff before she had dismounted safely from the car.

When charge 13 is taken in connection with the oral charge of the court that the claim is that the "car was negligently jerked," etc., the effect was to exclude the possibility of recovery for the door catching on the heel or foot of plaintiff while as a passenger she was alighting, and which negligent operation caused her to fall.

This court has held that a charge peremptorily excluding one theory of plaintiff's case which is supported by a scintilla of evidence is bad, and it is error to reverse to give the same. Montgomery Light & Traction Co. v. Harris, 197 Ala. 358, 72 So. 619. This case applied the foregoing principle to a similar situation in the giving of charge 13 for defendant. The allegation of the complaint in the Harris case was that defendant so negligently conducted its business that by reason of and as a proximate result thereof, the child was killed. This court held that charge one given at defendant's request restricted the right of recovery to the negligence of the motorman; that this was error, and that the motion for a new trial was properly granted on this ground.

When this ruling is applied to charge 13, it will be noted that there is a material difference between the expression "that the car did move" and that in the clause "for and on account of any alleged movement of the street car." The movement of the step or of the door, while plaintiff as a passenger was alighting from the car, is not included in the idea expressed in the first clause of the charge "that the car did move", but is included in the idea contained in the last clause "for and on account of any alleged movement of the street car." Under the instant pleading and facts, the movement of any material part of the street car, as the step or door from which plaintiff was alighting, was a movement of the street car proximately causing the injury charged. A jury would understand from charge 13 and the expression "the street car did not move" that said car did not move along the tracks. Thus the material theory of plaintiff's case was excluded, which there was evidence to support, towit, the catching of her foot or heel by the door as she alighted as a passenger from the street car, proximately causing her fall and the resulting injury as charged in the complaint.

Charge five given at the request of the defendant is as follows: "The Court charges the jury that the defendant company is not an insurer of the safety of its passengers and the mere fact, provided the jury are reasonably satisfied from the evidence that it is a fact, that the plaintiff received a fall or injury while she was still a passenger on defendant's street car does not authorize the jury to return a verdict in her favor. Before the jury would be authorized to return a verdict in favor of the plaintiff under Count A of the complaint they must be reasonably satisfied from the evidence that defendant was guilty of negligence and that this negligence proximately caused the injury complained of by the plaintiff and that the plaintiff herself was not guilty of any negligence which proximately caused or contributed to cause her alleged injury."

As to this insistence, we agree to the proposition settled by our decisions that a charge which requires the jury to be "reasonably satisfied" from the evidence that plaintiff is free from contributory negligence, requires plaintiff to acquit herself of contributory negligence, or places a condition precedent to plaintiff's right of recovery not authorized by law. Crotwell v. Cowan, 236 Ala. 578, 184 So. 195; Hodge v. Birmingham Electric Co., 236 Ala. 586, 184 So. 40; Louisville & N. R. Co. v. Mertz, Ibach & Co., 149 Ala. 561, 43 So. 7.

The concluding words of the charge, "and that the plaintiff herself was not guilty of any negligence which proximately caused or contributed" to her alleged injury, offended such rule and therefore, it was error to reverse in giving such charge.

Count B declared upon the wanton mismanagement or operation of the car. Charge 3, given at defendant's request in writing, was the general affirmative instruction for the defendant on the wanton count. This was reversible error. The statement of the facts shown in the bill of exceptions was to effect that the motorman said he was looking in his rear view mirror and saw the plaintiff get off the car. He testified in detail about her course as she was walking down the steps and on to the ground and three feet away from the car. The evidence was that he was looking back to see if any passengers were getting off; that he saw the lady get off, step from the step of the car to the cement or roadway, at which time the door of the car was open and the car standing still; that he was looking at her through his rear view mirror and that he could see therein approximately three feet away from the car.

As to this the plaintiff testified of her position in the car and of her passage to and from the rear of the platform to the ground. She said the street car doors were open when she got to the door and walked out. The car was still. "As I started to step off the car I had one foot to the

ground, my left foot had just stepped down, and the car gave a jerk and closed the door and caught my heel and jerked me back and threw me right off." From such respective testimony, the jury had the right to infer that the action in starting the car or in closing the door or folding of the step, under the circumstances, was a wanton act, since the man driving the car was an experienced motorman, having been with the defendant for nineteen years.

It became a question of credibility under the facts and the wanton count due to the testimony of the motorman and that of Miss Lambert. Birmingham Railway, Light & Power Co. v. Jung, 161 Ala. 461, 49 So. 434, 18 Ann.Cas. 557; Birmingham Electric Company v. Mann, 226 Ala. 379, 147 So. 165.

In the Jung case the plaintiff testified that while she was attempting to board the car with one foot on the ground and one foot on the step, the car started. The conductor testified that he gave the signal for the car to go ahead from a position on the back platform, and he claimed that he did not see the plaintiff in the act of boarding the car. The court said that from his position of vantage, the jury had the right to infer that he did see the plaintiff boarding the car, and notwithstanding that, gave the signal for it to go ahead. In the Mann case, supra, the testimony tended to show that while plaintiff was in the act of boarding the car, the door closed on her and the car began to move with a sudden jerk. The court said that the jury could reasonably find that the conductor in looking in the mirror saw the plaintiff, had knowledge of the fact that she was about to board the car; that while the conductor denied seeing plaintiff, he admitted looking in the mirror at the time; that he saw the man just behind her, and who gave the signal to stop, which was obeyed. A jury question was presented and the affirmative charge properly refused. In that case only the wanton count was involved.

The last two cited cases are to the effect that the court committed reversible error in giving the affirmative instruction as to count B. The judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

GARDNER, C. J., concurs in result.

BROWN and LIVINGSTON, JJ., concur.