25 So.2d 505
**GRIFFIN LUMBER CO. et al. v. HARPER.**
6 Div. 381.

Supreme Court of Alabama.
March 7, 1946.

Rehearing Denied April 18, 1946.

London & Yancey, of Birmingham, for appellants.

Ling & Bains, of Bessemer, for appellee.

LAWSON, Justice.

This is an action by Mrs. Myrtle Vines Harper, who sues as mother of Harvey Elwood Vines, Jr., deceased, her minor son, under the homicide statute, § 119, Title 7, Code of 1940, against Griffin Lumber Company, a partnership composed of O. A. Griffin and E. J. Staub, and against Griffin and Staub individually.

The case was submitted to the jury on plaintiff's complaint consisting of one count charging that the death of her minor son was caused by a wanton wrong of an agent, servant or employee of defendants, while acting within the line and scope of his employment in the operation of a truck belonging to defendants. Defendants interposed the plea of the general issue. There were verdict and judgment for the plaintiff, fixing the damages at $1,250. From this judgment defendants appeal.

Defendants seek reversal of this case on the sole ground that the trial court erred in refusing to give the affirmative charge for the several defendants, as requested by them in writing. Hence the only question presented for our consideration is whether the evidence is sufficient to support the charge that the death of plaintiff's minor son was proximately caused by the wanton misconduct of defendants' truck driver.

Wantonness is the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury. Duke v. Gaines, 224 Ala. 519, 140 So. 600; First National Bank of Dothan v. Sanders, 227 Ala. 313, 149 So. 848.

Plaintiff's minor son and defendants' truck driver, J. B. Nickless, were killed when the truck in which they were riding ran off a public highway into a ditch at a point approximately six miles south of Bessemer, Alabama, on the Morgan-Genery Gap Road, so-called. Plaintiff's decedent was riding as a guest in the truck which was owned by defendants and which at the time of the accident was travelling in a general northerly direction en route to defendants' mill in Bessemer with a load of green pine logs weighing approximately seven or eight tons. The accident occurred at about 2 o'clock in the afternoon of the 30th day of July, 1943. The surface of the road was made of chert and was dry at the time of the accident. Defendants' truck driver was shown to have been familiar with the road. There were no eyewitnesses. The record discloses that just prior to the accident the truck had descended a long hill, the top of which was approximately 1683 feet from the point where the accident occurred. There is a down grade of five per cent (a drop of five feet for every hundred feet) for a distance of 1300 feet, then the down grade decreases to three per cent for a distance of 200 feet at which point begins a two per cent up grade. One witness for plaintiff, a civil engineer, stated that the hill was not steep, while another witness for plaintiff described it as being fairly steep. There is a curve of seven degrees to the left beginning at a point where the up grade commences, which is 183 feet from the point where the truck hit a culvert on the right side of the road. The curve was described by the civil engineer who testified for plaintiff as being a gradual, regular curve. The surface of the road at the culvert is shown to be about 15 feet above the bottom of the ditch into which the truck fell. The south end of the culvert wall, which was constructed of stone and concrete, was badly damaged and the north wing of the culvert was damaged to some extent. The latter extended from the north end of the culvert wall at an angle of about forty-two degrees. The distance from the damaged area of the south end of the culvert wall to the damaged portion of the north wing was fixed at 22½ feet by one witness for plaintiff and at 27 feet by another. The truck came to rest just beyond this north wing of the culvert and was found to be burning by those who reached the scene of the accident soon after it occurred. It was completely destroyed. There were tracks between the travelled part of the chert road to the damaged portion of the culvert wall. There was nothing in or about the tracks to indicate that brakes had been applied or that the truck had been suddenly turned either to the right or the left. There was no evidence of skidding. The tracks led "fairly" straight from that part of the road normally travelled by northbound traffic to the damaged part of the culvert wall. There is no evidence as to the length of such tracks.

Evidence relating to the speed of the truck is limited to the testimony of a witness who saw a logging truck going in the direction of the scene of the accident a short time before it occurred, and of a highway patrolman who testified as an expert and who was permitted to express an opinion as to the speed of the truck at the time it hit the culvert wall. Defendants objected strenuously to the introduction of such testimony and excepted to the adverse rulings of the trial court, but no error is assigned in connection therewith. Hence, the question as to whether such testimony was properly admitted is not before us.

Mrs. Lorraine Stevenson, a witness for the plaintiff, testified on direct examination that she lived about one-half mile from the place where the accident occurred; that her home is on the other side of the hill from that which the truck descended just prior to the accident; that she remembered when the accident happened and that just a few minutes prior thereto she saw a lumber truck "going rather fast" in the direction of the culvert (the scene of the accident); that she could not drive an automobile and did not ride in them often but road in busses "once in a while." On cross-examination this witness testified that she was in her kitchen at the time she saw the truck and that she "just glanced up at it"; that she saw it for about a distance of 50 feet and that it was going fast.

Highway Patrolman Young reached the scene of the accident within a short time after it happened. He testified for the plaintiff, describing the place where the accident occurred, the condition of the truck, the damage to the culvert, and the nature and character of car tracks which he observed. On direct examination he was asked the following question: "Assuming, Mr. Young, that the truck you saw at the bottom of the fill was the truck that made the tracks you talked about, that hit the culvert and damaged the wing of the culvert, as you described it to the jury, and was on the ground below the culvert as you described, then what in your judgment, based on your experience as a highway patrolman and having experience for over a period of five years, what in your opinion would have been the speed of that truck." In answer thereto he stated, "About sixty miles an hour." On cross-examination this witness testified that the hill which the truck descended just prior

to the accident was fairly steep and was over a quarter of a mile long; that it was long enough and steep enough to cause a truck to reach a speed of 60 miles an hour by the time it reached the bottom of the hill if it was out of control and without brakes and came over the hill at a speed of from 20 to 25 miles an hour; that a heavily loaded truck without brakes would probably attain a speed of about 45 miles an hour by the time it reached the bottom of the hill if it started down the hill from a "stop position"; that the tracks which he observed leading from the regularly travelled part of the road to the culvert wall were straight and were of such a nature as not to give any indication that an effort had been made to make the turn; that he did not make an examination of the truck to determine whether or not the "steering-wheel and apparatus" had locked inasmuch as the entire front-end assembly had been severed from the truck; that in driving a truck at a speed of as much as 35 miles an hour around a curve on a loose gravel road there is a certain amount of sliding; that he had no knowledge of the speed which this truck was making at various points as it descended the hill.

The only witness called by the defendant was a Mr. Scott, who was in charge of the upkeep of defendants' truck at the time of the accident. He testified that he had overhauled the truck involved in the accident about a week prior thereto and that the brakes were in good shape; that in so far as he knew the truck was in good shape at the time of the accident; that the foot brakes were hydraulic and the emergency hand brake operated separately from the foot brakes; that a casualty may happen to hydraulic brakes suddenly, without any notice or warning to the driver; that emergency brakes sometime stick; that the steering gear of the truck was "made up of ball bearings" and that if one of the bearings chipped or cracked the steering gear would lock and the truck could not be turned.

As before stated, there were no eyewitnesses to the accident, and defendants' insistence for the affirmative charge rests upon the ground that wantonness has not been made to appear, but that the cause of the accident which resulted in the death of plaintiff's decedent is a matter of mere conjecture and speculation insufficient upon which to base a jury's verdict. But occur-

rence witnesses are not essential to the establishment of wantonness any more so than in the proof of actionable negligence. Hackley v. Robey, 170 Va. 55, 195 S.E. 689. In Harbin v. Moore, 234 Ala. 266, 175 So. 264, 266, it is said: "The fact that there was no eye witness does not present an insuperable obstacle, if proven circumstances suffice, for it is well established that both the cause of an injury and the question of actionable negligence may be established by circumstantial evidence, with the qualification, recognized by the authorities, that the circumstances must be proven and not themselves presumed."

Giving the evidence the most favorable construction in support of the verdict the jury could have reasonably found that the heavily laden truck of defendants was going fast at a point about one-quarter of a mile before it reached the crest of a long, fairly steep hill at the bottom of which was a regular, gradual seven degree curve to the left; that the road bed was constructed on a 15-foot fill at the point where the truck ran off the road; that the truck driver was familiar with the road, which was constructed of chert, and that at the time the truck hit the culvert it was making a speed of about 60 miles an hour.

The question here for solution is not whether any of these enumerated facts, standing alone, will sustain an allegation of wantonness, but whether all of them viewed together will maintain the allegation.

■■ In order to sustain the charge of wantonness there must be evidence to show or create a reasonable inference that defendants' truck driver had knowledge of decedent's peril and of the probable consequences of his conduct and with reckless disregard of such consequences he pursued that conduct which proximately caused the death of plaintiff's decedent. Couch v. Hutcherson, 243 Ala. 47, 8 So.2d 580, 141 A.L.R. 697. Knowledge need not be shown by direct proof. It may be made to appear, like any other fact, by showing circumstances from which the fact or actual knowledge is a legitimate inference. Birmingham Electric Company v. Mann, 226 Ala. 379, 147 So. 165; Birmingham R., L. & P. Company v. Jung, 161 Ala. 461, 49 So. 434, 18 Ann.Cas. 557. However, defendants' truck driver cannot be charged with knowledge of decedent's peril by virtue only of the fact that he was driving a heavily loaded lumber truck over the road in question. He was familiar with the road and, in fact, had made two or three trips over it without a mishap on the day of the accident. Therefore, as we view the case, the pivotal question is whether or not there has been any proof to show or create a reasonable inference that Nickless, defendants' truck driver, was consciously and intentionally driving the heavily loaded truck at such a speed, in view of the nature of the roadway which he was traversing, as to charge him with knowledge of decedent's peril and that injury would probably result to his companion if he continued down the hill and into the curve at that speed.

■ The physical aspects of the collision with the curb wall justify a conclusion that the speed of the truck had become very high when the impact occurred. In fact, there is expert testimony to the effect that at the moment of impact the speed of the truck was about 60 miles an hour. But, whether this was the result of the truck driver's wanton misconduct, or whether it might have resulted from mechanical causes connected with the car, cannot be determined from the evidence. Plaintiff urges that the force of the impact of the truck with the stone and concrete curb wall is sufficient evidence to establish the fact that the truck was driven down the hill at an excessive rate of speed. But proof of a mere possibility is not sufficient. Koger v. Roden Coal Company, 197 Ala. 473, 73 So. 33. The road over which the truck had just passed was not level but was constructed on a "fairly steep," long hill. Therefore, we are not here dealing with a situation where the only inference that can be drawn from the force with which the truck hit the curb wall is that just prior to the accident it was being driven at a high rate of speed by Nickless, defendants' truck driver. The momentum of the truck at the time it hit the curb wall could have resulted from the act of the truck driver in driving at an excessive speed, yet it could have been attained by the truck moving down the hill, out of control, without brakes, even though the speed of the truck was not in excess of 25 miles an hour when it came over the crest of the hill. The fact that the tracks between the usually travelled part of the road to the curb were straight and showed no indica-

tion that brakes had been applied, or that the driver attempted to take the curve, affords an inference that the truck had suffered some casualty to its mechanism. It cannot be said that one fact can be inferred when the existence of another inconsistent fact can be drawn with equal certainty. McKinnon v. Polk, 219 Ala. 167, 121 So. 539.

As before pointed out, the evidence shows that the truck hit the curb wall with terrific force, but the question here with which we are presently concerned is what caused it to do so. We think the rule as laid down in the case of Southern Railway Company v. Dickon, 211 Ala. 481, 100 So. 665, 669, is here applicable:

"Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.

"But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to why an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a judicial basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."

The proof in this case, in our opinion, goes no further than to show that the force with which the truck hit the curb wall could have been caused by defendants' truck driver driving at an excessive rate of speed. But we do not think that the proof warrants the conclusion that it did so occur, since from the same proof the force of the impact can with equal probability be attributed to mechanical failure of the truck. As we view the evidence, it is without selective application to either of the theories of causation and, therefore, they remain conjectures only. The evidence does not point to any one theory of

causation indicating a logical sequence of cause and effect. We conclude, therefore, that the fact that the truck hit the curb with terrific force does not justify a reasonable inference that the truck was being driven at an excessive rate of speed.

The only other evidence concerning the speed of the truck was the testimony of Mrs. Stevenson, who stated that she saw a truck "going fast" at a point about one-half mile south of the scene of the accident. The crest of the hill was shown to have been about one-quarter of a mile from the place where the accident occurred, so the point where this witness saw the truck was approximately one-quarter of a mile from the crest of the hill. This evidence could do no more than warrant the jury finding that the truck was "going fast" as it descended the hill. The issue was not whether the defendants' truck was being driven fast, but whether the driver was driving at such speed as to evidence a gross indifference to consequences in a situation where probability of injury was reasonably apparent. Such expressions as "going fast" or "going rather fast" are relative and are not evidence of actual speed. A speed that would appear very fast and unreasonable to one might seem moderate and reasonable to another. We do not think such expressions furnish a basis for a finding that the truck in this case was driven at a speed sufficient to constitute wantonness. The fact that a truck was "going fast" is not proof of nor does it justify an inference that it was moving at a dangerous speed in view of the nature of the roadway over which it was travelling. Under our decisions this witness, not shown to have been an expert, could not have testified that the truck was proceeding at a dangerous speed. Alabama Great Southern Railroad Co. v. Hall, Adm'x, 105 Ala. 599, 17 So. 176. In Aycock v. Green, Tex.Civ.App., 94 S.W.2d 894, 898, it is said: "The only evidence concerning the speed of the car was the testimony of a deputy, who said the car was going at a 'pretty rapid gait,' which is a purely relative term, from which, alone, no jury could convict the driver of operating the car at an unlawful, or excessive, or unusually dangerous speed." In Sarver v. Morrow, 121 Conn. 697, 183 A. 739, the plaintiff sued under a "guest statute" somewhat similar to our own. It was held that the testimony of a witness that the speed of

the offending car was "like lightning" was entitled but little weight as a definite statement as to the speed of the car. In Bertelli v. Tronconi, 264 Mass. 235, 162 N.E. 307, it is said: "The description of the speed as 'very fast' falls far short of showing a rate of speed that was dangerous or so excessive as to warrant a finding that the conduct of the [driver] was grossly negligent."

Closely examining the evidence upon which plaintiff relies to establish the fact that defendants' truck driver was consciously and intentionally driving the truck at a rate of speed sufficient to constitute wanton misconduct in view of the weight of the truck and the nature of the roadway over which it was travelling, and giving her the benefit of every inference taken in the most favorable light, as is required under our rules, we are unable to find anything which does more than to engender speculation.

[13] If we are to speculate, other causes may be conjectured, but, as disclosed by our decisions, verdicts may not be rested upon pure supposition or speculation, and the jury will not be permitted to merely guess as between a number of causes, where there is no satisfactory foundation in the testimony for the conclusion which they have reached.

In this view of the evidence, we are persuaded that the verdict rested merely upon speculation and that the affirmative charge requested by the defendants in writing should have been given. The conclusion here reached is supported by the following cases from other jurisdictions. Latham v. Hankey, 117 Conn. 5, 166 A. 400; Segel v. Gordon et al., 117 Conn. 271, 167 A. 719; Richter v. Seawell, 183 Va. 379, 32 S.E.2d 62; Grinstead v. Mayhew, 167 Va. 19, 187 S.E. 515; Law v. Gallegher, 39 Del. 189, 197 A. 479; Celner v. Prather, 301 Ill.App. 224, 22 N.E.2d 297.

The judgment will be reversed and the cause remanded.

Reversed and remanded.

BROWN, FOSTER and STAKELY, JJ., concur.

GARDNER, C. J., and LIVINGSTON and SIMPSON, JJ., dissent.