This is an appeal from an order of the Madison County Circuit Court granting the defendant's motion for a j.n.o.v.
Mr. Billy J. Walker, appellant herein and plaintiff below, brought action against Humana Medical Corporation alleging that the defendant negligently or wantonly permitted the transfusion of incompatible blood to the plaintiff. The defendant answered with a general denial.
A jury trial of this action was commenced on September 15, 1981. At the conclusion of the plaintiff's case in chief the defendant moved for a directed verdict on the ground that the plaintiff had failed to produce a scintilla of evidence in support of his wantonness claim. The trial court denied this motion.
At the close of the evidence the defendant renewed its motion for a directed verdict on the wantonness claim again contending that the plaintiff had failed to produce a scintilla of evidence in support of the claim. The trial court, though expressing doubt as to whether there was a scintilla of evidence supporting the wantonness claim, denied the motion and instructed the jury on both negligence and wantonness. On September 17, 1981, the jury returned a verdict in favor of the plaintiff awarding him $5,000 on his negligence claim and $7,000 on his wantonness claim.
On October 16, 1981, the defendant moved for a j.n.o.v. or, alternatively, for a new trial. As grounds for such motion the defendant alleged generally that the trial court erred in submitting the wantonness claim to the jury in that there was a complete lack of evidence in support of such claim.
After considering briefs and arguments in support of and in opposition to the motion, the trial court apparently determined that the wantonness count should not have gone to the jury because it entered an order setting aside the September 17 jury verdict to the extent of $7,000. The trial court made no ruling on the alternative motion for a new trial.
This appeal followed the trial court's granting of the j.n.o.v. motion.
The pertinent facts giving rise to this action are largely undisputed. The plaintiff was admitted to Medical Center Hospital in Huntsville on May 28, 1979. While in the hospital aortofemoral bypass surgery was performed. During the recovery process it was determined that the plaintiff should be given a blood transfusion.
A phlebotomist, a hospital employee responsible for taking blood samples, was sent to take blood from the plaintiff for the purpose of typing and cross-matching. When the phlebotomist arrived at the plaintiff's room she mistakenly took a blood sample from a Mr. Ricketts, a patient in the room with the plaintiff. Mr. Ricketts's blood was typed and cross-matched but was labeled as the blood of Billy J. Walker, the plaintiff.
Based upon the above, sample blood was ordered and the transfusion was started. A few minutes after the transfusion began the plaintiff's wife observed that the plaintiff's jaw was twisting and jerking. Shortly thereafter plaintiff's entire body began jerking. While restraining the plaintiff, the wife called for help. A nurse soon appeared and discontinued the transfusion.
The plaintiff's wife was informed that the plaintiff had experienced a reaction to the blood being given him. A hospital investigation subsequently revealed that the plaintiff had been given type A negative blood when he should have been given type O positive and that this mismatched blood caused the plaintiff's reaction. *Page 1109 
There is some conflict in the evidence as to the procedure followed by the phlebotomist in identifying the patient from whom she was to obtain a blood sample. The hospital investigator reported that the phlebotomist called the name of Mr. Walker but did not check the patient's armband prior to obtaining the blood sample. The plaintiff's wife testified, however, that the phlebotomist said nothing to either her or the plaintiff and, furthermore, that she did not call the patient from whom she drew the blood sample by any name nor did she ask the patient what his name was.
Through able counsel both the plaintiff and the defendant assert that the primary issue before this court is whether the trial court properly granted the defendant's j.n.o.v. motion. Simply stated, the plaintiff contends that the facts as summarized above sufficiently support the jury award based upon wantonness. The defendant contends simply that there is no evidence to support a finding that the defendant's agent in any way acted wantonly. For the reasons stated below, this court holds that the trial court improperly granted the j.n.o.v. motion.
Preliminarily, this court is of the opinion that the form of the jury verdict itself requires some comment. The learned and distinguished trial judge, on his own initiative, submitted separate forms to the jury on the plaintiff's claims of negligence and wantonness. The forms were worded in such a way as to allow the jury to award damages for both negligence and wantonness. The jury returned the forms as follows:
 We, the jury, find the issues in favor of the Plaintiff, Billy J. Walker, based on wantonness, and assess his damages at $7000.00.
 We, the jury, find the issues in favor of the Plaintiff, Billy J. Walker, based on negligence and assess his damages at $5000.00.
Thereafter, as indicated above, the trial judge set aside the jury verdict to the extent of $7,000 apparently upon the basis of a lack of evidence to support the wantonness claim. As stated above, the primary issue urged upon this court by counsel for both plaintiff and defendant is whether the trial court erred in granting the j.n.o.v. motion. No issue is made regarding the apparent inconsistency of the verdicts. This court, however, would be remiss in not commenting, for the benefit of all interested parties, that negligence and wantonness cannot exist in the same action. Thompson v. White,274 Ala. 413, 149 So.2d 797 (1963), and cases cited therein.
We now address ourselves to the primary issue presented by the parties to this court.
Both a motion for a directed verdict and a motion for j.n.o.v. are to be judged by the scintilla of evidence standard. Casey v. Jones, 410 So.2d 5 (Ala. 1981); Hanson v.Couch, 360 So.2d 942 (Ala. 1978). That standard requires that the motion be denied if there is a "gleam, glimmer, or spark" of conflict in the evidence. Hanson, supra; Chesser v.Williams, 268 Ala. 57, 104 So.2d 918 (1958). After reviewing the record, this court is of the opinion that there is a "gleam, glimmer, or spark" of conflict in the evidence regarding the plaintiff's wantonness claim. Therefore, the trial court erred in granting the j.n.o.v. motion.
The applicable legal principles are well settled. Wantonness has been most often defined by the Alabama courts as:
 [T]he conscious doing of some act or the omission of some duty which under knowledge of existing conditions and while conscious that, from the doing of such act or the omission of such duty, injury will likely or probably result, and before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the result. Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505; Taylor v. Thompson, 271 Ala. 18, 122 So.2d 277; Johnson v. Sexton [277 Ala. 627, 173 So.2d 790], supra. *Page 1110 
Lewis v. Zell, 279 Ala. 33, 36, 181 So.2d 101, 104 (1965). The most crucial element of wantonness is knowledge which may be proven by circumstantial evidence. Roberts v. Brown,384 So.2d 1047 (Ala. 1980); Whaley v. Lawing, 352 So.2d 1090 (Ala. 1977).
In this case there is no dispute that the phlebotomist had a duty to draw blood from the proper patient and that she breached that duty by drawing blood from the wrong person. In light of the above legal principles this court must determine the knowledge possessed by the phlebotomist when she breached the duty.
The record reveals that, at the time of this incident, the phlebotomist was twenty-two years old. She had obtained a B.S. degree in biology and had had one year of graduate study in the field of biology. Additionally, she had in excess of eighty hours of in-service training in the field of phlebotomy, two hours of which was devoted to positive patient identification. From the foregoing it is a reasonable inference that the phlebotomist was aware of the complications inherent in transfusing incompatible blood into a patient and that she was aware of the crucial role that correct patient identification serves in preventing the occurrence of such complications.
In the opinion of this court, the foregoing evidence and logical inferences therefrom sufficiently meet the scintilla standard. Stated differently, from the foregoing evidence the jury could have found that the phlebotomist failed to do her duty to draw blood from the proper person and that she failed to do this duty with the knowledge that such failure could lead to a reaction due to being transfused with incompatible blood and that such failure produced such a reaction.
The defendant contends that the knowledge necessary to impose liability for wantonness is not present in this case. In support of this contention the defendant cites, among others,Southern Bell Telephone Telegraph Co. v. Miller, 192 Ala. 346,68 So. 184 (1915). In that case the Alabama Supreme Court held that, even though Southern Bell had a duty to inspect its poles, because it had no knowledge that a pole which fell and caused injury was rotten, it was not liable for wanton conduct. Consequently, the wantonness count should not have been submitted to the jury. See also Whaley v. Lawing, supra. Based upon the foregoing authority the defendant contends that since there was no evidence that the defendant had any knowledge that the plaintiff was being given mismatched blood, the defendant cannot be liable for wantonness under the accepted definition of wantonness as set out above. Suffice it to say that we do not find such reasoning nor the authority supporting it persuasive in this case.
We do find persuasive, however, the opinion of our supreme court in Lewis v. Zell, supra. That case arose from an automobile collision. The evidence revealed that, at the scene of the accident, the defendant told the investigating officer that she "ran the red light." The evidence further revealed that the intersection where the accident occurred was heavily traveled. The supreme court held that the foregoing evidence was sufficient to justify submitting the issue of wantonness to the jury. Summarizing its reasoning, the court stated that:
 Under these circumstances, we think it is legitimate to infer that the defendant had knowledge of conditions which would make her conscious act of proceeding into the intersection against the red light likely to cause injury.
279 Ala. at 37, 181 So.2d at 105.
With some adaptation the foregoing language is applicable to this case. Specifically, we think that it is legitimate to infer from these circumstances that the phlebotomist had knowledge of conditions which would make her conscious act of drawing blood from a patient whom she had not identified likely to cause injury. Thus, the trial court erred in granting the j.n.o.v. motion.
The holding in this case and the holding in Lewis are not inconsistent with the holding in Southern Bell, which the defendant relies upon. The distinction between these *Page 1111 
two positions can be found in the knowledge of existing conditions possessed by the various defendants. In the Lewis
case the condition that the defendant had knowledge of was that if she ran a red light at a busy intersection she would likely have a collision. In the instant case the condition that the phlebotomist had knowledge of was that if she failed to get a blood sample from the right person there would likely be injury due to being transfused with mismatched blood. Thus, because of the knowledge possessed by the defendant in Lewis and the defendant in the instant case, each of the foregoing defendants was aware that if they breached their duty injury would likely follow. On the other hand, the defendant in Southern Bell had no knowledge that if it failed to inspect the pole that injury would likely follow. Therefore, the defendant had no knowledge that would make it aware that if it breached its duty, injury would be the likely result.
This case is due to be reversed and remanded for disposition not inconsistent with the foregoing opinion.
REVERSED AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur.
 ON REHEARING
The plaintiff who prevailed on appeal has filed with this court an application for rehearing. This court has carefully considered this application.
One of the "requests" of plaintiff is that this court specifically recognize that the jury verdict or verdicts fall within the "law of the case" rule as stated in Ross-ClaytonFuneral Home, Inc. v. Turner, 358 So.2d 754 (Ala.Civ.App. 1978). This court would only comment that we specifically noted in our original opinion that "[n]o issue is made regarding the apparent inconsistency of the verdicts."
Other matters raised in plaintiff's application for rehearing require no comment or it would be inappropriate for this court to comment.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
WRIGHT, P.J., and BRADLEY, J., concur.