BRADLEY, Judge.
The appeal is from judgment for plaintiffs in an action on an insurance policy.
The plaintiffs, the Fitzsimmonses, filed an action against the defendant, Allstate Insurance Company, seeking recovery on a homeowner’s policy of insurance issued to them by Allstate. Plaintiffs alleged in their complaint that due to water damage as a result of Hurricane Frederic, the floor in their house had buckled and had to be repaired. Allstate answered by denying that it was liable, claiming any water damage suffered by plaintiffs resulted from moisture getting into the floors of plaintiffs’ house from drain or runoff water, and this peril was not covered by the insurance policy.
The insurance policy provides that there is no coverage for water damage resulting directly or indirectly from the following:
“(a) flood, surface water, waves, tidal water, or overflow or any body of water, or spray from any of these, whether or not driven by wind;
“(b) water which backs up through sewers or drains; or
“(c) water below the surface of the ground. This includes water which exerts pressure on, or flows, seeps or leaks through any part of a dwelling, or other structure, sidewalk, driveway or swimming pool.
Allstate does cover “water damage not specifically excluded in this policy.”
After a trial before a jury, a verdict was returned for the plaintiffs in the amount of $7,350.43. This verdict was corrected by the trial court to read $7,976.52. During the trial defendant moved for a directed verdict at the close of plaintiffs’ evidence and at the close of all the evidence. After the verdict and judgment, the defendant moved for judgment n.o.v. or, in the alternative, a new trial. All the motions were denied and defendant appeals to this court.
Mr. Fitzsimmons testified at trial that the hurricane caused a tree to fall on their house in the area of the kitchen, causing damage to the roof and gutters. Another *1061 falling tree caused the chimney to separate from the house, causing water to leak into the house. Windows were broken, cracks developed in the joints of the house, and the sidewalk was also damaged. The plaintiffs were without electricity for seven or eight days.
About five days after the hurricane struck, plaintiffs noticed the floors in the house buckling, especially in the kitchen, breakfast nook, and utility room. The floors were vinyl or carpet covered particle board over a plywood subfloor. Mr. Fitz-simmons testified that water leaked down the cathedral roof into an inside wall next to a bathroom. The sheetrock around the chimney was water soaked. He stated that the water got to the floor by way of these leaks and this caused the floors to buckle. Prior to the storm there had been no problems with leaking in the house or with the floors buckling.
About two weeks after the storm, defendant issued a check to plaintiffs for $890 for the removal of a tree from the house, repair of roof shingles and gutter, and to replace the food in the plaintiffs’ freezer that had been lost due to the lack of electricity. After the plaintiffs reported the floor damage, defendant caused an inspection of the premises to be made and issued a supplemental check for $473.59 for additional damage. The defendant specifically denied the claim for damage to the floors, and the plaintiffs refused to accept the $473.59 check.
A building contractor witness for the plaintiffs testified that he inspected plaintiffs’ house about a month after the storm and particularly examined the floors both inside the house and under the house. He said the particle board flooring had been properly installed but had buckled up in many places throughout the house.
The contractor said that he observed water marks inside the house in the chimney area and around the windows in the front of the house. He did not observe any water leaking in the back of the house where the tree had fallen on the house. He testified that in his opinion that water got into the house because the air conditioner did not work for seven or eight days after the storm and the humidity thus generated soaked the particle board flooring causing it to buckle. He said that it would cost $5,000-$6,000 to repair the flooring in the plaintiffs’ house.
Defendant’s witnesses testified that in their opinion the damage to the floors was caused by absorption of moisture from beneath the house. The house sits off the ground about eighteen inches and the drainage from the swimming pool went toward the house. The ground under the house was wet when examined by one of the witnesses for defendant. This witness also stated that he did not believe the water that soaked the particle board came from cracks in the roof. It was also his opinion that lack of air conditioning right after the storm did not cause the collection of moisture in the particle board so as to cause it to buckle.
Defendant’s first issue is that the jury’s verdict was based on speculation and conjecture. Defendant contended in motions for directed verdict and motion for new trial that there was no evidence that the damage to the flooring in plaintiffs’ house was covered by its policy of insurance. Defendant argues that it is pure speculation or conjecture that the moisture in the particle board flooring resulted from the effects of Hurricane Frederic. It says that a verdict based on mere speculation and conjecture must be set aside. Defendant relies on Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505 (1946), wherein the supreme court said:
“Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.
“But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deduci *1062 ble from them as a reasonable inference. There may be two or more plausible explanations as to why an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a judicial basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.”
See also McClinton v. McClinton, 258 Ala. 542, 63 So.2d 594 (1953).
Plaintiffs reply that there was sufficient evidence before the jury for it to conclude that the damaged floors were caused by Hurricane Frederic and that the trial court properly overruled the motions for directed verdict and new trial. They assert that the jury’s function is “to determine the credibility of the witnesses and to draw all reasonable inferences from the evidence, to resolve controverted factual issues.” Trans-South-Rent-A-Car, Inc. v. Wein, 378 So.2d 725 (Ala.1979).
Where a directed verdict has been requested, the trial court must view the entire evidence, and all reasonable inferences which a jury might have drawn from that evidence, in a light most favorable to the nonmoving party. Caterpillar Tractor Co. v. Ford, 406 So.2d 854 (Ala.1981). And such a verdict should not be granted if there is a scintilla of evidence to support the complaint. Perdue v. Mitchell, 373 So.2d 650 (Ala.1979). If, however, the evidence in support of the complaint is based on speculation and conjecture, there is no scintilla of evidence which would authorize a denial of the motions for directed verdict.
Mr. Fitzsimmons testified that water leaked into his house as a result of the trees being blown down on it by the storm. He also stated that windows in the house were blown out by the storm. He further stated that he noticed the floors buckling about five days after the storm. In the eight months plaintiff lived in the house prior to the storm, they had not encountered any problems with water leaking into the house or the floors buckling. We believe the jury could reasonably conclude from this testimony that the floors buckled because water leaked into the house as a result of the damage to it caused by Hurricane Frederic. Certainly this evidence points to a theory of causation with a logical sequence of cause and effect even though there were other plausible theories with support in the evidence. See Griffin Lumber Co. v. Harper, supra. We find, therefore, that there was sufficient evidence of the cause of the plaintiffs’ damage to permit the jury to decide the issue, and the trial court properly denied the motions for directed verdict.
In its remaining two issues, defendant asserts that the trial court erred by correcting the verdict of the jury and that as corrected the verdict is excessive and contrary to the evidence. ■
The jury’s verdict is as follows:
“We the jury vote in favor of the plaintiffs for the total sum of $7350.43 which includes 6% interest from September 12, 1979 to date and $473.59 from claim number 184-903-0489.”
In their motion to correct the judgment, the plaintiffs alleged that the $7,350.43 did not include the $473.59 for claim # 184-903-0489 and therefore the total amount of the judgment should be $7,976.52, which included $52.30 as court costs.
In its reply defendant says that the only contested item of damage relates to the floors and that the only testimony concerning the amount of' floor damage came from plaintiffs’ witness. This witness testified that the floors could be repaired for $5,000 to $6,000. This is the only evidence in the record as to the amount of damage to the floors. Moreover, as contended by defendant, the verdict of the jury for damages cannot vary from the uncontradicted opinion of value. Stone v. Echols, 351 So.2d 902 (Ala.1977); Farmers & Ginners Cotton Oil v. Reliance Insurance, 341 So.2d 147 (Ala.1976).
*1063 By computing interest at the rate of six percent per annum from September 12, 1979 to January 7, 1982, a total of about twenty-eight months, on $6,000, the maximum estimate of damage in evidence, we obtain an amount of $840 as interest for this period. The $840 as interest added to the $6,000 gives an amount of $6,840.
If, as argued by the plaintiffs in their motion to correct the judgment, the $473.59 should have been added to the $7,350.43 because the jury had rendered verdicts for two separate amounts, the jury’s verdict is excessive and contrary to the evidence. The verdict of the jury for damage to the floors including interest could not have exceeded $6,840.
We conclude that the jury’s verdict is not excessive nor contrary to the evidence because the jury computed the interest at six percent for a stated time on the $6,000 opinion value for damage to the floors and then, as they clearly said in their verdict, added the $473.59 to the amount they had obtained by adding the interest to the $6,000. A total amount of the verdict would be $7,313.59 plus $52.30 as costs of court, or $7,365.89, not $7,956.52 as entered by the trial court on motion to correct the judgment.
The trial court’s judgment upholding the jury’s verdict for plaintiffs is affirmed; that aspect of the trial court’s judgment correcting the amount of the jury’s verdict is reversed and the cause remanded for entry of judgment in the amount of $7,313.59 plus $52.30 as court costs.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., concurs.
HOLMES, J., concurs in the result.