STEAGALL, Justice.
This is an appeal by plaintiffs Brandon Chase Hamer, a minor, who sues by and through his mother and next friend, Connie Hamer, and Connie Hamer, individually, from a judgment based on a partial directed verdict in favor of defendant Harold Nelson. We reverse.
This lawsuit, based on theories of negligence and wantonness, arose from a motor vehicle accident that occurred on April 27, 1984, around 4 p.m. on Eastern Valley Road in Tuscaloosa County near the Jefferson County line.
Brandon Hamer suffered personal injuries when the three-wheel Honda cycle (an off-road vehicle) he was operating was struck by a Ford Mustang automobile being driven by the defendant, Harold Nelson. Hamer at that time was 15 years and 10 months of age and lived near the accident scene. Eastern Valley Road is a paved, two-lane county road that runs north and south. Going south (the direction Nelson was traveling) the road goes from Jefferson County into Tuscaloosa County.
Just prior to the accident, Hamer had been operating his three-wheel vehicle on Eastern Valley Road and had exited the paved road onto a gravel road. He then turned his cycle around and stopped. At this point he was facing Eastern Valley Road; he looked to his right and then to his left to check for approaching traffic before re-entering the paved road. To his right, Hamer observed a van approaching in the northbound lane. While waiting for the van to pass, so that he could pull onto the roadway behind the van and proceed in the same direction as the van, Hamer looked to his left. His view in this direction (i.e., checking for traffic approaching in the southbound lane) was obstructed by the concrete abutment of a bridge located almost adjacent to the point where the gravel road intersects with Eastern Valley Road. The two lanes of Eastern Valley Road cross this bridge. Believing that no traffic was approaching in the southbound lane (from his left), Hamer was about to proceed onto the roadway, crossing the southbound lane, turning to his left into the northbound lane. Defendant Nelson’s vehicle, however, was proceeding in the southbound lane and was crossing the bridge at the moment Hamer looked to his left to check for approaching southbound traffic.
Not knowing that Nelson’s vehicle was approaching, because of his obstructed view, Hamer pulled into the roadway and was struck by Nelson’s vehicle. Before the impact, Nelson, upon seeing Hamer’s cycle directly in front of him in the roadway, immediately applied his brakes and jerked his steering wheel to the left. Hamer, upon hearing Nelson’s tires squealing, looked, saw Nelson’s vehicle, and accelerated the cycle in an attempt to move over into the northbound lane. Upon impact, Hamer was thrown onto the hood of Nelson's car and was injured. Nelson’s car slid off the road and the cycle turned over in the road. The property damage to the two vehicles was minor.
*1383 The plaintiffs subsequently filed a personal injury action against Nelson in the Circuit Court of Jefferson County, seeking $250,000 in damages. Upon timely motion by Nelson, the action was transferred to the Circuit Court of Tuscaloosa County. The complaint averred that Nelson was guilty of negligence and wantonness in connection with the accident. Nelson denied the allegations and pleaded contributory negligence on the part of Brandon Hamer. At trial, following the close of the plaintiffs’ evidence, Nelson moved for a directed verdict on the issue of wantonness, and the motion was granted. Plaintiffs objected. Nelson subsequently put on his evidence as to the negligence claim and then moved for a directed verdict on this issue as well. This motion was denied and the case went to the jury on the issue of negligence only. The jury returned a verdict in favor of defendant Nelson.
The sole issue here is whether the trial court erred in granting the directed verdict in favor of the defendant on the claim of wanton conduct (i.e., whether there was a scintilla of evidence to support the plaintiffs’ claim, thereby requiring the trial court to submit the claim to the jury).
A corollary issue necessarily arises here as to the applicable standard of appellate review in the context of this case: a directed verdict in favor of the defendant, granted at the close of the plaintiffs’ proof, which does not dispose of the entire case. We will first address the applicable scope of our review. It has been generally held that:
“The standard by which the trial court must determine the propriety of granting a motion for directed verdict, and likewise the standard upon review, is the scintilla rule. Turner v. Peoples Bank, 378 So.2d 706 (Ala.1979). The function of an appellate court in reviewing a motion for directed verdict is to view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the nonmoving party. Beloit Corp. v. Harrell, 339 So.2d 992 (Ala. 1976); Caterpillar Tractor Co. v. Ford, 406 So.2d 854 (Ala.1981).” (Emphasis supplied.)
Thomaston v. Thomaston, 468 So.2d 116, 119 (Ala.1985). The authorities upon which this proposition is based, however, consistently involve a motion for directed verdict in a procedural posture that can be distinguished from the procedural posture of the motion in the instant case. In Beloit Corp. and in Caterpillar Tractor Co., supra, the defendant’s motion for directed verdict was denied; here the motion was granted. Moreover, the opinion in Beloit Corp. does not indicate at what point the motion for directed verdict was made. The facts of Caterpilllar Tractor Co. clearly indicate that the defendant there moved for a directed verdict not only at the conclusion of the plaintiff’s case but also at the close of all the evidence, thereby “opening the door” for appellate review of the entire record. Indeed, in Thomaston, supra, the verdict was directed at the close of all the evidence. Here the defendant’s motion for directed verdict was made at the close of the plaintiffs’ case and was granted.
The defendant/appellee argues that our review is limited to the evidence adduced prior to entry of the directed verdict. We agree, and therefore hold that where a partial directed verdict is granted to the defendant, at the close of the plaintiffs’ evidence, which disposes of a particular issue but not the entire case, the scope of appellate review is necessarily restricted to the evidence in the record at the time the verdict was directed. To hold otherwise would, as the appellee points out, allow additional evidence that was not before the trial court at the time the motion was considered to “come in behind” the ruling on the motion and thereby influence the reviewing appellate court. We would point out that this result is consistent with the holdings of this Court in regard to the scope of appellate review of a summary judgment:
“In determining the propriety of summary judgment, i.e. whether there exists any genuine issue of material fact, we are limited in our review to the same factors considered by the trial court when it initially ruled on the motion, *1384 Ex parte Bagby Elevator & Electric Co., Inc., 383 So.2d 173 (Ala.1980), and on such a motion the trial court can consider only the material which is before it at the time of submission of the motion. Stallings v. Angelica Uniform Co., 388 So.2d 942 (Ala.1980).” (Emphasis supplied.)
Prudential Ins. Co. of America v. Coleman, 428 So.2d 593, 598 (Ala.1983).
It is well established that “a directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ.” Ritch v. Waldrop, 428 So.2d 1 (Ala.1982). Moreover, in considering the motion for directed verdict, the trial court must allow an issue to “go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes [so much as] a mere gleam, glimmer, spark, the least particle, the smallest trace, or a scintilla in support of the theory of the complaint,” Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797 (1972), and, “[i]f any reasonable inference drawn from the evidence proves to be adverse to the moving party, a motion for directed verdict is due to be denied.” Quillen v. Quillen, 388 So.2d 985, 988 (Ala.1980).
Wanton conduct has been defined by this Court as:
“[T]he conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury.”
Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505, 506 (1946). “What constitutes wanton misconduct depends upon the facts presented in each particular case.” Pate v. Sunset Funeral Home, 465 So.2d 347 (Ala.1984). “Wantonness may arise [when one has] knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger and in violation of law brings on the disaster.” Lewis v. Zell, 279 Ala. 33, 181 So.2d 101 (1965). But “[knowledge need not be shown by direct proof. It may be made to appear, like any other fact, by showing circumstances from which the fact [of] actual knowledge is a legitimate inference.” Griffin Lumber Co. v. Harper, supra, 247 Ala. at 620, 25 So.2d at 508.
In applying these established guidelines, we conclude that there was a scintilla of evidence to support the plaintiffs’ claim of wantonness. The evidence before the court at the time of the defendant’s motion for directed verdict included several photographs depicting the accident scene. These photographs, coupled with the testimony of the plaintiffs’ witnesses, established a disputed issue of material fact as to which reasonable persons could draw differing inferences.
Although there were no eyewitnesses to the accident other than the two involved in it, plaintiffs called as witnesses two persons, Rodney McCully and Barbara Smith, who lived on Eastern Valley Road near the accident scene, both of whom arrived at the scene shortly after the accident occurred. Both testified as to remarks purportedly made by the defendant at the scene regarding the speed of his vehicle at the time of impact. On direct examination, Rodney McCully testified:
“Q Did you hear any conversation between the persons there?
“Q I heard Harold say that he was going 55 to 60. I’m not sure who he was talking to.
“Q Somebody asked him the question?
“A Yes.
“Q And you heard Harold say how fast he was going?
“A He was going 55 to 60 miles an hour.”
Barbara Smith similarly testified, as did plaintiff Brandon Chase Hamer. Brandon Hamer, in describing what transpired at the accident scene immediately following the collision, testified as follows:
*1385 “Q Okay. Now, did you have any conversation with Mr. Nelson while you were lying there on the ground?
“A All I remember, I asked him, I said, ‘You know, just out of curiosity, how fast were you going?’ He said, ‘About fifty-five or sixty.’ ”
This was uncontroverted evidence at the close of the plaintiffs’ proofs, going to show the speed of the defendant’s vehicle. Rodney McCully also testified that he observed skid marks, left by the defendant’s vehicle, “about five or ten yards” in length. It was for the jury here to determine the credibility of these witnesses, drawing from the evidence whatever inferences were necessary in determining the speed of the defendant’s vehicle. Although proof of an illegal speed does not necessarily prove wanton misconduct, as discussed infra, the speed of the defendant’s vehicle in the context of this case is necessarily one of the factors that a jury would consider in its determination of the issue of wantonness.
This Court has had, upon its view of the record, the benefit of viewing the photographs of the accident scene and the adjacent area. It is somewhat difficult to describe the area in this opinion. The two-lane road upon which this accident occurred is a rural road. Near the scene and facing southbound traffic, there is a sign indicating a speed limit of 35 or 40 m.p.h.[1] Closer to the bridge, traveling southward, there is a sharp curve and the road then slopes downward into a “straightaway” stretch heading toward the bridge. The defendant’s answers to interrogatories, which had been introduced, revealed that the defendant, upon traveling down this slope and proceeding along the “straightaway,” observed Hamer stopped on the cycle a few feet from the road’s edge. The curve is marked by signs indicating a speed limit of 20 m.p.h. and by “arrow” signs indicating a sharp curve. Thereafter, in the direction of the bridge, is a “narrow bridge” sign. The bridge itself is marked with striped warning signs. It is also difficult to explain in this opinion the angle at which the plaintiff sat on his cycle on the opposite side of the bridge from the defendant’s vehicle, but the photographs suggest that because of the grade of the gravel road, his vision to his left was partially obscured by the concrete abutment of the nearby bridge.
Based on these facts, the defendant’s speed was a question of fact to be determined by the jury. Depending upon its determination of that question, and considering the totality of the circumstances, the jury could have concluded that the defendant was greatly exceeding the posted speed limit and had made no effort to reduce his speed even though he had passed a number of advisory and warning signs.
The appellee urges that proof of an illegal or excessive speed alone does not necessarily constitute proof of wanton misconduct. Mink v. Brown, 276 Ala. 3, 158 So.2d 647 (1963). While we agree with this principle, basic to our inquiry in the instant case is the holding of this Court in Smith v. Cullen, 270 Ala. 92, 97, 116 So.2d 582 (1959):
“ ‘ * * * The rate of speed alone does not constitute willful or wanton negligence. Northern Alabama R. Co. v. McGough, 209 Ala. 435, 96 So. 569 [(1923)]. There must exist the other necessary elements of such culpable act or the failure to act, in such circumstances of time, place and knowledge on the part of defendant of the peril that imposed the duty to act or refrain from acting to cause the injury.’ Callaway v. Griffin, 245 Ala. 598, 602, 18 So.2d 547, 549 [(1944)].
“It is true that circumstances may exist so that merely driving a car at an unlawful and excessive speed would not constitute wanton misconduct. As we understand the evidence, however, the circumstances of this case coupled with the speed of defendant’s car were such as would reasonably justify the inference that defendant, with knowledge of the probable consequence of injury to plaintiff, recklessly drove at excessive speed and thereby caused the collision.” (Emphasis supplied.)
*1386 While the factual context of Smith v. Cullen can be distinguished from that of the case at bar, that case stands for the proposition that although driving at an excessive speed, in and of itself, does not constitute wanton conduct, speed coupled with other circumstances can indeed rise to the level of wantonness.
The trial court’s judgment based on the directed verdict in favor of defendant Nelson on the wantonness count is reversed, and the cause is remanded for a new trial on that count. See Burns v. Moore, 494 So.2d 4 (Ala.1986).
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.

. There was conflicting testimony regarding the speed limit posted on this sign.