Rel: November 17, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

————————————————

### SC-2023-0355

————————————————

**Mobile Infirmary Association d/b/a Mobile Infirmary Medical Center and Gulf Health Hospitals, Inc., d/b/a Thomas Hospital**

**v.**

**Wayne Fagerstrom, individually and as administrator of the Estate of Sylvia Fagerstrom, deceased**

**Appeal from Baldwin  Circuit Court**
**(CV-20-900001)**

SELLERS, Justice.

In this medical-malpractice/wrongful-death case, the Baldwin Circuit Court entered a judgment on a jury verdict in favor of the plaintiff Wayne Fagerstrom, individually and as the administrator of the estate of Sylvia Fagerstrom, deceased. The defendants are Mobile Infirmary Association d/b/a Mobile Infirmary Medical Center ("MIMC") and Gulf Health Hospitals, Inc., d/b/a Thomas Hospital. The defendants argue on appeal that the trial court erred in denying their renewed motion for a judgment as a matter of law at the close of all the evidence, in which they asserted that the plaintiff had failed to offer sufficient evidence demonstrating that the proximate cause of Sylvia's death was sepsis resulting from an infected pressure ulcer allegedly caused by the defendants' breaches of the standard of care. We agree with the defendants and reverse the trial court's judgment.

Sylvia was 85 years old when doctors discovered a tumor on her brain. In October 2018, a surgeon at MIMC extracted the tumor, but Sylvia did not recover as hoped. Instead, she became malnourished and lethargic, had trouble speaking, and developed high blood pressure and a blood clot. She also suffered from chest pain, nausea, swelling in her

lower extremities, toxic metabolic encephalopathy, and a recurring urinary-tract infection that was particularly resistant to antibiotics.

As is relevant to the plaintiff's theory of liability, Sylvia also developed a pressure injury on her sacrum while at MIMC. Sylvia's injury began as a small "tear" but later progressed to a Stage 3 pressure ulcer during Sylvia's stay at MIMC. The plaintiff asserts that nurses at MIMC breached the applicable standard of care and caused her pressure injury by not turning her frequently enough in her hospital bed. In November 2018, Sylvia was transferred to a nursing home, where her ulcer apparently began to heal. Thereafter, however, she was admitted to Thomas Hospital and her injury progressed to a Stage 4 pressure ulcer. The plaintiff asserts that Sylvia's injury worsened at Thomas Hospital because the nurses there, like the nurses at MIMC, allegedly failed to turn her frequently enough.

After her stay at Thomas Hospital, Sylvia was transferred to a second nursing home, where, according to the plaintiff's expert witness, her ulcer became infected. Sylvia was then transferred back to Thomas Hospital and, after further treatment, returned to the second nursing

home. She died at that nursing home approximately three and one-half months after her brain surgery at MIMC.

The plaintiff's expert witness, Dr. David Seignious, testified that the defendants' alleged breaches of the standard of care caused Sylvia to develop the ulcer, which became infected and led to a bone infection, which caused sepsis that resulted in Sylvia's death. The defendants, however, challenge Dr. Seignious's opinion that Sylvia died from sepsis caused by the infected ulcer. Accordingly, they assert that the plaintiff failed to present sufficient evidence of proximate cause and that his claim therefore should not have been submitted to the jury.

Section 6-5-549, Ala. Code 1975, provides, in pertinent part:

> "In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider based on a breach of the standard of care, the minimum standard of proof required to test the sufficiency of the evidence to support any issue of fact shall be proof by substantial evidence."

See also Hrynkiw v. Trammell, 96 So. 3d 794, 797 (Ala. 2012) (indicating that, to avoid the entry of a judgment as a matter of law in favor of the defendants, the plaintiffs in a medical-malpractice action bore the burden of presenting substantial evidence in support of all the elements of their claims). "[S]ubstantial evidence is evidence of such weight and quality

4

that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989). To establish proximate cause, the plaintiff was required to demonstrate with expert medical testimony that Sylvia probably died from sepsis caused by her infected ulcer. See University of Alabama Health Servs. Found., P.C. v. Bush, 638 So. 2d 794, 802 (Ala. 1994) ("To prove causation in a medical malpractice case, the plaintiff must prove, through expert medical testimony, that the alleged negligence probably caused, rather than only possibly caused, the plaintiff's injury."). The trial court's denial of the defendants' renewed motion for a judgment as a matter of law is subject to de novo review, but we must view the evidence in a light most favorable to the plaintiff. See Thompson v. Patton, 6 So. 3d 1129, 1133 (Ala. 2008).

The defendants assert that Dr. Seignious's opinion that Sylvia died from sepsis caused by her ulcer was based on mere speculation instead of "objective data" obtained from medical testing, such as measurements of Sylvia's pulse, respiration, blood pressure, and body temperature. Dr. Seignious agreed that it is important to consider that sort of medical data

5

when diagnosing or ruling out sepsis. He also agreed when asked if it is particularly important to study a patient's vital signs "toward the end of life" in order to diagnose sepsis because it is possible that a patient could have sepsis at some earlier point, but not at death.

Dr. Seignious's testimony suggests, however, that some of this important objective data had been omitted from Sylvia's medical records and that he was therefore unable to review it. Although Dr. Seignious testified that he "believe[d] there were some vitals done around the 10th or 12th of February," which was within two days of Sylvia's death, it is not clear from the parties' briefs exactly what those vital signs showed. In his brief to this Court, the plaintiff references those vital signs, but he does not clearly explain what they indicated or how they suggested that Sylvia died from sepsis caused by her infected ulcer. The only express reference to sepsis in Sylvia's medical records that Dr. Seignious testified to during the trial was a statement made by a surgeon approximately three weeks before Sylvia died indicating that the surgeon had discussed with Sylvia's family the potential risks of removing dead tissue surrounding her ulcer, which included the potential for "bleeding,

infection, the need for further [removal of tissue], sepsis, and other cardiopulmonary complications."

According to Dr. Seignious, in the absence of objective data, experts must rely on their "medical judgment" and "what the projected course or the normal course of the condition is." In other words, he based his opinion that Sylvia died from sepsis resulting from her infected ulcer on what he claimed was the typical progression and end result of the sort of infection Sylvia had. But, as the defendants point out, results from several medical tests performed on Sylvia at the second nursing home and in hospice care multiple times every day during the 10 days before she died did indeed reveal a significant number of objective vital signs for each of those days, including Sylvia's pulse, respiration, blood pressure, and body temperature. Dr. Seignious, however, apparently was unaware of those records before the trial.[1]

---

[1]The plaintiff appears to suggest that there were other types of tests that were not performed on Sylvia in the days leading up to her death, including "blood count" tests and "kidney function" tests. To the extent that the plaintiff suggests that, in the absence of those two types of tests, none of the available objective vital signs, such as pulse, blood pressure, or body temperature, should have been considered, the portion of the record he cites does not support that suggestion.

Other medical experts, including Dr. Donald Plummer, an infectious-disease specialist who personally treated Sylvia, testified that Sylvia's vital signs leading up to her death did not indicate that she had sepsis when she died. To the contrary, Dr. Plummer testified, Sylvia did not have a fever, her blood pressure was stable, and her heart rate was not unusually high. Dr. Jimmy Adkisson, who prepared Sylvia's death certificate, opined that Sylvia died from renal failure with contributions from deep-vein thrombosis, coronary artery disease, valvular heart disease, and malnutrition. There is no mention on the death certificate of Sylvia's ulcer or sepsis, and Dr. Adkisson testified that, based on Sylvia's medical records, she was in fact not septic when she died. A third expert called by the defendants, Dr. Aimee Garcia, who is a wound specialist with experience in pressure injuries and sepsis, agreed with Dr. Plummer and Dr. Adkisson that, based on Sylvia's objective vital signs leading up to her death, she was not septic when she died.

In affirming a summary judgment in favor of a defendant in a medical-malpractice action, this Court has said:

> "'[T]he opinions of an expert may not rest on "mere speculation and conjecture." Townsend v. General Motors Corp., 642 So. 2d 411, 423 (Ala. 1994).' Dixon v. Board of Water & Sewer Comm'rs of Mobile, 865 So. 2d 1161, 1166

(Ala. 2003). '[A]s a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. See, e.g., Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So. 2d 505 (1946).' Alabama Power Co. v. Robinson, 447 So. 2d 148, 153-54 (Ala. 1983). An expert witness's opinion that is conclusory, speculative, and without a proper evidentiary foundation cannot create a genuine issue of material fact. Becton v. Rhone-Poulenc, Inc., 706 So. 2d 1134, 1141-42 (Ala. 1997)."

Bradley v. Miller, 878 So. 2d 262, 266 (Ala. 2003).[2]  Evidence indicating that an injury could have occurred a certain way is not sufficient; the proof must support a reasonable inference that the injury did occur as alleged.  Shanes v. Kiser, 729 So. 2d 319, 321 (Ala. 1999).

As the defendants note in their brief to this Court, "Dr. Seignious's testimony concerned what he thought potentially might happen in a so-called 'projected,' 'normal course,' but it is undisputed that every other physician who reviewed what actually happened -- the 'objective data' in the vital signs -- unanimously and conclusively testified that [Sylvia] did not die of sepsis."  The defendants' brief at 48.  Thus, according to the

---

[2]The judgment under review in Bradley was a summary judgment, not a ruling on a renewed motion for a judgment as a matter of law.  But the standard of review for a ruling on each sort of motion is "materially indistinguishable."  Hathcock v. Wood, 815 So. 2d 502, 506 (Ala. 2001). Specifically, the standard is whether the nonmoving party has submitted substantial evidence in support of his or her claims.

defendants, Dr. Seignious's opinion was not supported by a proper evidentiary foundation, was conclusory and speculative, and did not justify submitting the issue of causation to the jury.

In Shanes v. Kiser, 729 So. 2d 319 (Ala. 1999), upon which the defendants rely, this Court affirmed a judgment as a matter of law in favor of a defendant medical provider based on the lack of sufficient evidence indicating that the decedent in that case had died from a heart attack the defendant medical provider allegedly failed to discover or anticipate. The plaintiff's expert in Shanes opined that the cause of death was likely a heart attack because the symptoms the decedent exhibited were consistent with a heart problem and because "statistics suggest[ed] that more people die each year of heart-related problems than of any other cause." 729 So. 2d at 322. This Court, however, concluded that that testimony simply demonstrated that the decedent could have suffered a heart attack, not that she actually did. We agree with the defendants in this case that Dr. Seignious's testimony regarding "the projected course or the normal course of the condition" is analogous to the expert testimony in Shanes. Although there is evidence indicating that Sylvia developed a pressure ulcer while at MIMC and that that ulcer

10

worsened to the point of infection while under the care of the defendants, the plaintiff did not submit substantial evidence indicating that, <u>when she died</u>, Sylvia was suffering from sepsis caused by the infected ulcer and that that specific condition caused her death.

The plaintiff relies heavily on <u>Hannon v. Duncan</u>, 594 So. 2d 85 (Ala. 1992), in which this Court determined that a trial court had not erred in denying a defendant physician's motion for a judgment as a matter of law. The physician had performed surgery on the plaintiff's decedent, which allegedly resulted in her becoming paralyzed. The decedent died six years later while suffering from pressure ulcers and kidney infection, which are common conditions in paraplegics. On appeal, the physician argued that the plaintiff's expert testimony was not sufficient evidence indicating that the decedent's death was caused by the paralysis that allegedly led to ulcers and infections. This Court disagreed. The Court in <u>Hannon</u>, however, relied on the old "scintilla rule" of evidence, which justified the submission of a claim to a jury if there was so much as a mere gleam or glimmer of evidence to support that claim. That outdated standard does not apply in the present case; the plaintiff in this case was required to present substantial evidence of

causation. Moreover, as the defendants point out, nothing in Hannon suggests that the expert witness in that case failed to consider the relevant objective data or criteria necessary to reach an opinion on the cause of death.

We do note that laboratory reports from blood tests that were performed a month before Sylvia's death and again three and a half weeks before her death showed that Sylvia had an increasing white-blood-cell count, which indicated that she had an unspecified infection at those times. Nothing demonstrates, however, that she had an elevated white-blood-cell count at the time of her death. The defendants also acknowledge "a few references to 'sepsis' or 'urosepsis' … in [Sylvia's] medical records … two or more weeks before her … death." The defendants' brief at 21 n.7. According to Dr. Plummer, however, those references related to Sylvia's urinary-tract infection, not her pressure ulcer. And, according to Dr. Adkisson, a single reference to "sepsis, unspecified organism" on an "Inpatient Coding Summary" created by Thomas Hospital two weeks before Sylvia died did not support a conclusion that Sylvia was septic when she died. Moreover, Dr. Seignious

12

did not testify regarding the above-referenced mentions of "sepsis" in Sylvia's medical records.[3]

We reverse the trial court's judgment and remand this matter for the entry of a judgment as a matter of law in favor of the defendants. The Court pretermits discussion of the defendants' alternative argument that they are entitled to a new trial based on the trial court's alleged error in refusing to strike certain prospective jurors from the jury panel.

REVERSED AND REMANDED.

Shaw, Wise, Bryan, Stewart, Mitchell, and Cook, JJ., concur.

Parker, C.J., and Mendheim, J., concur in the result.

---

[3]The plaintiff does not offer a convincing response to the defendants' assertion that the passing references to sepsis in Sylvia's medical records do not constitute evidence of causation because causation must be proven by expert medical testimony.